## WESTERN UNION TELEGRAPH COMPANY V. PARTHENA NATIONS.

### No. 3181.

**Notice of Importance of Telegraphic Message.**—The plaintiff sent a telegram to her son by a former marriage, as follows: "Your stepfather died this morning." The agent of the telegraph company receiving the message was informed by the plaintiff's son, who delivered him the message, "that his father was dead, and that he wanted the telegram sent at once; that it was important that it be sent at once." The fee for sending was paid. The message never reached its destination. The plaintiff testified that she desired the presence of the son to whom the message was sent, etc. *Held:*

1. The telegraph company was sufficiently put upon notice of the circumstances making important the speedy delivery of the message.

2. The message could be regarded as a request to the son to come to his mother in her distress.

3. That the mental suffering caused by the son not reaching his mother to aid her in the funeral and burial of his stepfather was ground for damages.

4. A verdict for $300 was not excessive.

APPEAL from Hopkins. Tried below before Hon. E. W. TERHUNE. The opinion states the case.

*A. H. Field*, for appellant.—1. The court erred in holding that plaintiff could recover in this action, because she fails to state any damage or injury for which the law would compensate her. Rowell v. Tel. Co., 75 Texas, 26; McAllen v. Tel. Co., 70 Texas, 243.

2. The court erred in holding that plaintiff could recover in this action, because there was nothing in the message to indicate any desire upon the part of plaintiff to have her son with her, or that any action was to be taken by the addressee of the message, S. H. Perry. Tel. Co. v. Brown, 58 Texas, 170; Tel. Co. v. Kirkpatrick, 76 Texas, 217.

*B. W. Foster*, for appellee.—When an operator and an agent of a telegraph company is fully informed of the importance of a message by the sender, a telegraph company would be charged as other corporations or persons with knowledge of objects and purposes of same. Tel. Co. v. Brown, 71 Texas, 724.

GARRETT, PRESIDING JUDGE, *Section B.*—Parthena Nations brought this suit against the Western Union Telegraph Company for damages, consisting in injury to feelings arising from the alleged failure of the appellant to deliver a telegram to her son S. H. Perry, announcing the death of her husband. She alleged that she was deprived of the aid, consolation, and advice her son would have given her, and of his presence as a staff to uphold her in such a dire calamity; and that she was damaged in the sum of 25 cents paid for the transmission of the telegram, and in injury to her feelings.

There was a plea of general denial by the defendant.

No jury having been demanded, the law and the facts were submitted to the court, which rendered judgment in favor of plaintiff for the sum of $300. Defendant excepted and gave notice of appeal, and the case is before us for revision upon proper assignment of errors.

The findings of fact which were filed by the judge, so far as they are pertinent to this appeal, may be summarized as follows:

Plaintiff was twice married. S. H. Perry, to whom the telegram was addressed, was a son by the first marriage, and resided in Sulphur Springs, Hopkins County. Plaintiff had been married to Mr. Nations about twenty years, and by him also had children. On November 6, 1887, she and her husband and their two children lived two miles from Anona, a railway station in Red River County, where defendant had a telegraph station. Defendant also had a telegraph station at Sulphur Springs. Mr. Nations died that day early in the morning, and plaintiff sent Joseph Nations, her son, 17 years of age, and a neighbor to Anona to telegraph for her son S. H. Perry, and they immediately went and delivered to defendant the following telegram:

"ANONA, 11–6, 1887.

"*To S. H. Perry, Sulphur Springs, Texas:*

"Your stepfather died this morning.

"MRS. P. NATIONS."

They paid 40 cents for the transmission of the message, which was the regular price. Joseph Nations told the agent at the time that his father was dead, and that he wanted the telegram sent at once; that it was important that it should be rushed through at once.

The message was sent at once, and was received by defendant's agent at Sulphur Springs by 11:30 o'clock that morning, and he gave it to the messenger boy for delivery. There was a negligent failure to make a delivery of the telegram for several days. If the telegram had been delivered promptly, as might have been done, Perry could have left Sulphur Springs before 7 o'clock p. m. on November 6, by rail, and arrived at Anona by 10 a. m. the next day. He would have gone to his mother at once. He did go on November 13, when he finally received the telegram.

Plaintiff had resided at Anona only a short time, and desired to bury her husband at their old home, near Blossom Prairie, in Lamar County. She desired her son to be with her for the advice and consolation his presence would afford her, and to arrange and superintend the burial, and aid her in moving the corpse; but failing to hear from him, she kept the body until late in the evening of November 7, when she was compelled to bury it about dark on that day, at Anona.

There are two questions presented: Was there any damage or injury for which the law would compensate Mrs. Nations? If so, was

there anything in the message to indicate her desire to have her son with her, or that any action was to be taken by him? Appellant violated its contract with Mrs. Nations promptly to send and deliver the telegram to S. H. Perry with all reasonable dispatch; and for a breach of the contract she was entitled to recover the sum paid to appellee for the transmission of the message, and injury to feelings, as actual damage; if the facts should show that such injury was occasioned as the law would allow compensation for, and that the damage was reasonably within the contemplation of the parties when the contract was made. We can not doubt that the grief of Mrs. Nations at the death of her husband was attended with disappointment and anguish at the failure of her son to arrive and be present with her, with consolation and advice and direction in the burial of her deceased husband. This additional source of grief was from an independent cause, and was a proximate result from the breach of its contract by the defendant. It can not be said, as in Rowell v. Telegraph Company, 75 Texas, 26, that the bitter disappointment of Mrs. Nations at the absence of her son was a mere continuation of the grief over the death of her husband. From the language of the telegram itself, to say nothing of the testimony of the witness Joseph Nations, that he told the operator that his father was dead, and that it was important that the telegram be rushed through at once, the defendant was bound to know that the mother was informing her son that her husband was dead. It was unnecessary that the telegram should contain in its terms an invitation to the son to come and be with her, for such was the reasonable interpretation to put upon it. It was information from the grief-stricken mother to her son that his stepfather (her husband) was dead, and it could be hardly presumed that an express invitation would be needed for him to come.

The case of Reese v. Western Union Telegraph Company, decided by the Supreme Court of Indiana (24 N. E. Rep., 164), is upon very similar facts and is very much in point, the only difference being that it is not so strong a case upon the facts as this case. In that case the telegram was, "My wife is very ill; not expected to live." It was signed Wm. Reese and addressed to A. S. Clements, who was his brother-in-law. The court said. "It is true there was nothing in the telegram to indicate the kinship that existed between the appellant and the person to whom the message was addressed, nor did it request the presence of Mr. Clements or his wife at the bedside of the dangerously sick sister-in-law, but this affords no excuse to the appellee for its failure to deliver the telegram." And again: "From the information before it when it entered into the undertaking, the appellee was bound to know that mental anguish might, and most probably would, come to some person in case it failed to act promptly in transmitting and delivering the dispatch, and therefore such a result was contemplated when the

message was delivered by the appellant to the appellee's agent at Jamestown, and is within the undertaking. Whether such mental suffering would be caused by the failure of a brother-in-law and wife to go at once to the bedside of a dying sister-in-law, or from the failure of a physician to reach his patient while there was still hope that something might be done to bring relief and possibly a restoration of health, or for some other cause, is unimportant."

In Western Union Telegraph Company v. Broesche, 72 Texas, 658, the telegram was, "Mrs. Broesche is dead; will bring corpse on train to-night." It was sent for the benefit of the sender, and the court said it "was too obvious to require explanation."

The case of Western Union Telegraph Company v. Kirkpatrick, 76 Texas, 217, has been cited by appellant. In that case there was no mention of Mrs. Kirkpatrick, for whose benefit the suit was brought. The telegram was to her husband to come and bring Ferdinand, who was a brother of Mrs. Kirkpatrick; that his father was very low. It was held that a suit could not be maintained for injury to her feelings, as there was nothing in the telegram "to apprise the company either that plaintiff had a wife, or that she was at Highland Station, or that the object of the communication was to afford information upon which she was expected to act."

We think that in this case the appellant was in the possession of information sufficient to make it within the contemplation of the parties that the telegram was sent for the benefit of Mrs. Nations, and was in effect an invitation to her son to come to her. Joseph Nations told the agent that it was important, and that he wanted it rushed through at once. Why, except for the benefit of the sender? And could not the mother rely on her son to come without a command or an invitation to do so? To us it appears that the appellant was in possession of sufficient information to make it reasonably apparent that the telegram was sent for the benefit of Mrs. Nations, and that it was an invitation to her son to come and be present with her.

Believing that the judgment of the court below should be affirmed, we so report.

*Affirmed.*