### GOODSON v. WESTERN UNION TELEGRAPH CO. (No. 69.)

(Court of Civil Appeals of Texas. Beaumont. April 6, 1916. Rehearing Denied Oct. 13, 1916.)

1. PLEADING ⬦34(3) — GENERAL DEMURRER.
   On general demurrer, every reasonable intendment arising from a pleading will be indulged in favor of its sufficiency.
   [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 69; Dec. Dig. ⬦34(3).]

2. TELEGRAPHS AND TELEPHONES ⬦66(1)— PERSONS BENEFITED BY SICK MESSAGE—INTEREST—PRESUMPTIONS.
   The addressee of a telegram is presumed to be the person for whose benefit the message is sent; and, where it relates to a sick person, the addressee is presumed to have a serious interest in the condition of such person.
   [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 61; Dec. Dig. ⬦ 66(1).]

3. TELEGRAPHS AND TELEPHONES ⬦37(9)— DELIVERY OF MESSAGE—DELAY—NOTICE OF RELATIONSHIP.
   A telegraph company was charged with notice of the relationship existing between the addressee and the parties named in a telegram, reading "Send Oscar at once to wait on his father. Lida sick."
   [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 29, 32; Dec. Dig. ⬦37(9).]

4. TELEGRAPHS AND TELEPHONES ⬦37(9)— DELIVERY OF MESSAGE—DELAY—NOTICE OF CONTENTS.
   Such telegram was sufficient to put the telegraph company on notice that the father of the addressee and Oscar, brothers, was sick, or in such condition as to need waiting upon.
   [Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 29, 32; Dec. Dig. ⬦37(9).]

5. TELEGRAPHS AND TELEPHONES ⬦60—DELAY IN DELIVERY—RIGHT OF ADDRESSEE.
   Where a telegraph company negligently delayed delivery of a message, asking the addressee to send his brother to wait on their father, who was sick, and needed attention, the company was liable to the addressee, he having a cause of action, not only because he himself was deprived of opportunity to go to his father, but

also because he was deprived of opportunity to send his brother.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 49, 50; Dec. Dig. ☜60.]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by W. A. Goodson against the Western Union Telegraph Company. From a judgment of dismissal, plaintiff appeals. Reversed and remanded.

E. B. Pickett, Jr., of Liberty, for appellant. F. J. & C. T. Duff, of Beaumont, for appellee.

BROOKE, J. Appellant sued to recover damages for the negligent failure of defendant to deliver to him a telegram sent by his sister, notifying him of the illness of his father. The trial court sustained a general demurrer, and ordered the cause dismissed. Appellant duly excepted to that judgment, and properly perfected his appeal.

Omitting the formal parts of appellant's petition, it is as follows:

"That on said date last named plaintiff was residing about two miles from Dayton, Tex., and employed at a pumping station of the Moores-Bluff corporation, and his father was residing at Stockdale, Tex., and had been ill for some time; and on said date L. D. Hopkins, plaintiff's brother-in-law, and with whom his father was living, delivered, as agent for plaintiff, to the defendant at its office in Stockdale, for transmission and delivery to plaintiff, a telegram in substance as follows:

" 'W. A. Goodson, Phone % Irrigating Pumping Station, Dayton, Texas.

" 'Send Oscar at once to wait on his father. Lida sick.　　　[Signed]　L. D. Hopkins.'

"That some days before said telegram was sent, as above alleged, plaintiff had informed his sister, Mrs. Lida Hopkins, wife of said L. D. Hopkins, that if his [plaintiff's] father grew worse (plaintiff knowing he was sick at that time), or needed nursing and waiting upon, for her to wire plaintiff that such was the case, and he would at once come himself if possible, or send their brother Oscar Goodson, who is the 'Oscar' named in the said message, and according to that understanding between plaintiff and his said sister, Mrs. Hopkins, her husband sent the said message to plaintiff, as alleged in last preceding paragraph.

"That the said L. D. Hopkins, at the time of delivering said telegram for transmission as aforesaid, paid the defendant the proper and customary charge of such transmission, and the same was correctly transmitted and received in defendant's office by its agent at Dayton, Tex., about 10 o'clock in the forenoon of December 9, 1914; that said telegram could have been delivered to plaintiff within a few moments after it reached Dayton by phoning him the contents thereof, for at that time a telephone line extended from the town of Dayton to the said pumping station where plaintiff was employed, and where he was at work that day, and it had been the custom of defendant to make use of said telephone line for promptly communicating messages that were received for persons who were residing or working at the place, and in the vicinity of the place where plaintiff was then employed, and defendant's agent at Dayton, Tex., who received said telegram well knew where plaintiff was and how said message could be promptly communicated to him, as they were well acquainted with him personally, as well as

188 S.W.—47

with his brother, Oscar, mentioned in said telegram.

"That had said telegram been promptly delivered to plaintiff, he would have at once sent his brother, Oscar Goodson, to the bedside of their father, and would have gone himself, so that his father could have received from them assistance and attention of which he was sorely in need; that plaintiff's father was very sick at that time, and plaintiff's sister, Mrs. Lida Hopkins, being also sick, his father was greatly in need of the help which said telegram requested, and that help plaintiff would have immediately supplied had said telegram been promptly delivered to him; but the telegram was never delivered to plaintiff, and his father died on the 11th day of December, A. D. 1914, at 9 o'clock a. m., and before plaintiff had received any word that the help and assistance called for in said telegram was needed.

"That by the use of reasonable and proper diligence, defendant could have delivered to plaintiff said telegram on the .9th day of December, A. D. 1914, in time for him and his brother, Oscar, to have reached the ·bedside of their father that same night; but by .reason of the negligence of the defendant, and its agents and servants, in failing to deliver said telegram with reasonable and proper diligence, plaintiff was prevented from sending his brother, Oscar Goodson, to wait upon his father during his illness, and also was prevented from going himself to render the same service, and too, he was prevented from reaching the bedside of his father before his death, and from being with him and having his brother, Oscar, there to minister to his father's urgent needs and wants during the last hours of life, and thus was prevented from providing, as it is the natural impulse of a child, though himself grown to mature manhood, to provide for a father during his illness and at his death, that tender nursing and affectionate attention to his comfort and care in every manner that is always proper and necessary in times of such suffering, sorrow, and distress, and that plaintiff's father all the more needed on this occasion, because his daughter, Mrs. Hopkins, was also sick and unable to nurse and attend to him as his helpless condition required, and by reason and in consequence thereof, plaintiff has suffered severe disappointment and great grief and much mental pain and anguish. in all to his actual damage in the sum of $1,950."

The appellant contends that the law presumes that the addressee in the message sent by appellant has a serious interest in the condition of the person named in the message as being sick; that it is the settled law of this state that the telegraph company is charged with notice of the relationship which actually exists between parties named in the message, whether this relationship be described by the telegram or message or not; that the telegraph company is charged with notice of the purpose for which the message was sent, and where the message relates to· serious sickness, the company must know that the addressee has a serious interest in the prompt delivery of the telegram, and that the telegraph company is charged with notice of any additional information concerning the matter, to which the telegram relates, which could have been obtained from the sender by inquiry therefor; that the addressee in the telegram, being presumed to have a serious interest in the message, and the presumption of law further being that he is the person for whose benefit

the message was sent, has a cause of action for any loss of injury occasioned to him by the negligence of the telegraph company in failing to promptly deliver the telegram; that the plaintiff's cause of action is that defendant's negligence deprived him of the satisfaction, comfort, and solace he naturally would have gained by being present with his father to nurse him himself during his last hours, and, further, that he was deprived of the satisfaction, comfort, and solace it would have afforded him to send his brother, Oscar, to be with their father, so that he might nurse him and attend to his wants during his last hours; that had the telegram been promptly delivered, he would have at once sent his brother, Oscar Goodson, to the bedside of their father, and would, also, have gone himself, so that his father could have received the assistance and attention which he needed, and that their father was, in fact, greatly in need of the help which said telegram requested, and which would have been immediately supplied, had said telegram been promptly delivered.

The appellant, in support of his propositions, has filed a very able brief and argument, contending that the telegraph company was charged with notice, by the telegram, that appellant was needed to wait on his father, and that on receipt of the message he would have gone to him; in addition, that the petition clearly charges that appellee's negligence in failing to deliver the telegram prevented appellant from sending his brother, Oscar, to wait upon his father during his illness, and that he was prevented from having his brother, Oscar, there to minister to his father's needs, during his last hours, and was thus deprived from providing for his father, during his last illness and at his death, that care and affectionate attention that is necessary in times of such suffering and sorrow and distress, and that plaintiff's father all the more needed this attention on this occasion, because Mrs. Hopkins, the daughter, was also sick, and unable to nurse and attend him, and that by reason and in consequence of these, the plaintiff had suffered severe disappointment and great grief and much mental anguish. They argue with much plausibility and force that, without reference to whether appellant would have personally gone to his father, it would have been a source of solace and comfort to appellant could he have sent his brother, Oscar, to minister to their father, having alleged that he had, some days before the telegram was sent, informed his sister, Mrs. Hopkins, with whom their father was living, that if he grew worse and needed nursing and waiting upon, for Mrs. Hopkins to wire appellant that such was the case, and that he would have at once come himself, if possible, or sent his brother, Oscar, and that, according to that understanding between appellant and Mrs. Hopkins, her husband sent appellant the message in question; that

appellant, being greatly concerned, arranged in advance for providing his father with whatever help he might need, and that appellee's negligence deprived him of the opportunity of having his brother be with his father for that purpose, and that the telegraph company, having breached its contract with appellant, should not be allowed to escape upon the plea that the telegram was not notice that the appellant himself contemplated hurrying to his father, to be with him and nurse him at that time; that the telegram did advise the appellee that appellant was expecting to send his brother, Oscar, at once, and that the telegram specially requested that Oscar be so sent at once, to wait upon his father, and, the petition having alleged that appellant would have complied with the request, that the negligence of the company in failing to deliver the telegram deprived him of the solace and satisfaction it would have afforded him to send his brother, Oscar, to minister to their father's wants, and that he was vitally concerned in having his brother, Oscar, present for that purpose, especially in view of the fact that Mrs. Hopkins was herself sick, and unable to minister to her father.

The appellee contends: That the telegram addressed to W. A. Goodson, and reading, "Send Oscar to wait on his father. Lida sick," does not charge the telegraph company that Goodson's father was sick or dying, or that his presence was desired or needed, or that on receipt of the message he would go to his father, and if the message was not delivered he would suffer mental anguish at not being present during his father's last illness, but that the message, to the contrary, indicates that his presence is not needed or desired. That the plaintiff, in this connection, undertakes to charge the telegraph company with notice: (a) That the father mentioned in the message was his father; (b) that the party mentioned as father was very sick and dying; (c) that the party mentioned as father was in need of attention by reason of sickness; (d) that if the telegram had been delivered, the instructions given in same to send Oscar would not have been carried out, but that the addressee would have gone, and the appellee says that, unless the wording of the message was sufficient to disclose to the telegraph company these facts, the general demurrer was properly sustained.

[1] On general demurrer, every reasonable intendment arising from pleadings will be indulged in favor of its sufficiency. In the case of Western Union Telegraph Company v. Adams, 75 Tex. 532, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 876, suit was brought to recover damages for defendant's delay in delivering the following message:

"To F. E. Adams, Athens.

"Clara, come quick. Rufe is dying.

"[Signed] O. M. Simmons."

The appellant in that case took the position that the message did not disclose that the relationship of brother and sister existed between Rufe and Clara, and that the allegations in the petition do not disclose that appellant had notice of the relationship existing between them at the time it contracted to transmit said message, and, by reason of the want of notice of this fact, that the appellant could not be held liable for damages sued for in that cause. The court in passing upon said case, used the following language:

"The rule insisted upon by appellant is too restricted to be safely applied to communications sent by the electric telegraph. Plaintiff seeks to recover damages on account of mental pain suffered by his wife because of her inability to be with her brother when he was dying. The allegations and the evidence show that her failure to be with him was on account of her failure to receive information of his condition in time to reach him by the means of conveyance that were at her command. It is difficult to conceive of any form of expression that would have more accurately conveyed to her the information intended than would that used in the telegram had it been delivered to her. If any diligence had been used for its delivery, when it reached its destination she would not only have known the condition of her brother that it was intended to communicate, but would have known it in ample time to have reached him while living and conscious. The mental pain suffered by her on account of being deprived of this privilege is recognized by the law as a ground for the assessment of damages against defendant if it was induced by its negligence. The contention of defendant, in effect, is that it can only be held liable for such damages as may be supposed to have been in the contemplation of the parties if the telegram was delayed in its delivery, and that no damage can be held to have been in contemplation of the defendant not suggested by the language of the dispatch, and that all that could be gleaned from this dispatch by its agents was that some person at Waco wanted some person at Athens named Clara to come quickly to Waco, because some person named Rufe was dying. It seems to be well settled that telegraph companies are not charged with knowledge of the importance of delivering cipher dispatches, as in the nature of things they cannot know the contents of such telegrams, that mode of expression being adopted to keep them from knowing. The rule is a just one that preserves them from the responsibility that such knowledge would impose on them. There seems to be an effort to extend this rule beyond the occasion for it, and to practically make all telegrams expressed in abbreviated language cipher dispatches. We think a distinction in this respect must be made between messages couched in terms intended to conceal their meaning and such as have *no such purpose*, but are intended to convey information by the use of no more words than are necessary when given their accustomed meaning. It is well known to the public, and cannot be unknown to telegraph companies, that the utmost brevity of expression is cultivated in correspondence by telegram. It is as well known that that mode of communication is chiefly resorted to in matters of importance, financially and socially, requiring great dispatch. *When such communications relate to sickness* (italics ours) and death, there accompanies them a common-sense suggestion that they are of importance, and that the persons addressed have in them a serious interest. It would be an unreasonable rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed. *When the general* nature (italics ours) of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be, when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so, to charge his principal with the information that inquiries would have developed."

In the case of Western Union Telegraph Company v. D. C. Fegles, reported in 75 Tex. p. 537, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 876, which is a suit based on failure to deliver a telegram at Ft. Worth, Tex., sent at Malvern, Ark., by a daughter-in-law, concerning her husband's condition, to his mother, as follows:

"S. A. Feegles, Ft. Worth, Texas.

"Come to Malvern first train. Lee is very dangerously wounded.

"[Signed]　　　　　　Bertha Mahone."

It was contended that there was nothing in the face of the message by which the telegraph company, in contracting to transmit and deliver the message, contemplated that the relation of mother and child existed between the parties, and that the mother's feelings would be injured by a failure upon the part of the company to perform its contract, and that there was neither allegation nor proof that the telegraph company had notice of the relationship existing between Lee Mahone and S. A. Fegles at the time it contracted to transmit and deliver the message, and therefore that it could not be held that the company was liable for injury to the feelings done S. A. Fegles, as a mother, for her inability to be present at the burial of Lee Mahone, her child. The trial court in that case overruled defendant's demurrer to plaintiff's petition, and on appeal it was held that there was no error committed in overruling the demurrer, citing Telegraph Company v. Edsall, 74 Tex. 329, 12 S. W. 41, 15 Am. St. Rep. 835, and the Adams Case, supra.

The case of Western Union Telegraph Company v. Carter, 85 Tex. 581, 22 S. W. 961, 34 Am. St. Rep. 826, is a case in which the message read as follows:

"W. S. Carter, Taylor, Texas.

"N. B. Gorshusch dead. Answer.

　　　　　　　　　　　"F. S. Faust."

Gorshusch seems to have been W. S. Carter's wife's father. The company had no notice, except the terms of the message. Carter sued for damages caused by mental anguish of his wife, on account of failure to get to her deceased parent. The case was tried before the judge, without a jury, in the lower court, and findings of fact filed, which were adopted by the Court of Civil Appeals, and Judge Brown of the Supreme Court, in passing upon this case, said:

"The telegraph company had offices and operators at Taylor and Smithville, about 50 miles apart. W. S. Carter lived at Taylor. His wife, M. E. Carter, was the daughter of N. B. Gorshusch, who died near Smithville on the 4th day of September, 1899. About 6 o'clock on that

day F. S. Faust delivered to the operator at Smithville" a message as mentioned. "This message was not delivered to Carter until 11:55 a. m. of the next day. * * * The operator at Smithville who received the message did not know the relationship between Carter and deceased, nor that Carter had a wife. About an hour after the message was transmitted he was informed that Carter was a son-in-law of deceased. The operator at Taylor did not know the facts until after the message was delivered."

"The plaintiff in error presents this assignment * * * for our consideration: 'The court erred in its conclusion of law that the defendant is chargeable with notice, or is affected with notice, by the terms of the message, of the relationship of either W. S. Carter, who is named, or M. E. Carter, who is not named in the message, to N. B. Gorshusch, or of any other purpose or object of said message than to advise W. S. Carter of Gorshusch's death and to obtain an answer.' As to M. E. Carter, the objection is well taken. She is neither mentioned in the message, nor was there any actual notice of her relationship to deceased" (citing Telegraph Co. v. Kirkpatrick, 76 Tex. 217, 13 S. W. 70, 18 Am. St. Rep. 37; Elliott v. Tel. Co., 75 Tex. 18, 12 S. W. 954, 16 Am. St. Rep. 872).

"As to W. S. Carter, the objections presented in this assignment are not well taken. The only case decided by this court that will support the proposition made is that of Tel. Co. v. Brown, 71 Tex. 723, 10 S. W. 323, 2 L. R. A. 766, which has been practically overruled by all succeeding cases involving the same points. That no doubt may hereafter exist, we here expressly overrule that case in so far as it asserts the proposition that it is necessary that a message must disclose the relationship of the persons named in it. Since the case of Tel. Co. v. Brown, the cases decided in this court have held contrary to the contention of the plaintiff in error" (citing the Adams and Fegles Cases, supra, and also Tel. Co. v. Moore, 76 Tex. 66, 12 S. W. 949, 18 Am. St. Rep. 25; Potts v. Tel. Co., 82 Tex. 545, 18 S. W. 604, and Tel. Co. v. Jones, 81 Tex. 271, 16 S. W. 1006, which messages conveyed information of serious illness of the persons named).

In the case of Telegraph Company v. Broesche, 72 Tex. 654, 10 S. W. 734, 13 Am. St. Rep. 843, and Telegraph Company v. Rosentréter, 80 Tex. 406, 16 S. W. 25, and Telegraph Company v. Nations, 82 Tex. 539, 18 S. W. 709, 27 Am. St. Rep. 914, which said cases convey information relating to the death of the parties named, the court, continuing, says:

"In the foregoing cases the same questions arose as are here presented, and this court held in each that the telegraph company was chargeable with notice of the relationship that existed between the parties named in the message and of the purposes for which the communication was sent. In the case of Telegraph Company v. Broesche, the name of the plaintiff did not appear connected with the message, but the operator who received it knew that it was sent for him, and the company was held bound upon such actual notice the same as if plaintiff had signed it."

After commenting upon the Adams Case, supra, the court quotes from Justice Gaines in Tel. Co. v. Moore, supra, as follows:

"We are of opinion, attested by the rules announced in the cases cited, the message under consideration was sufficient to reasonably apprise the defendant of the consequences of its failure to deliver the message according to contract. The conclusion to be drawn from the language of the message is that a near relationship existed between the person mentioned in the message and the person to whom it was addressed, and that upon its receipt the latter would probably have set out at once to attend his relation in his extremity. Such being the case, it would be unreasonable to hold that the company, upon the receipt of the message, should not have contemplated the consequences which were likely to result to plaintiff from the failure to transmit it with diligence and dispatch."

Continuing, the court says:

"In the case now before the court, the message was addressed to W. S. Carter, and notified the company that Gorshusch was dead; that Carter was, in all probability, a near relative with 'a serious interest' in the intelligence communicated, and in all probability upon the receipt of the message would set out at once to attend the funeral and to care for the remains. The probable purpose of adding the word 'answer' was to learn whether or not the message was delivered, and whether or not the party addressed would be able to arrive in time to attend the burial or to direct it. From the rules laid down in the foregoing decisions of this court, this plain and just rule may be deduced: The telegraph company is chargeable with notice of the relationship that exists, if any, between all parties named in the message, and with notice of such purposes as may be reasonably inferred from the language used, in connection with the subject-matter of the communication, taking into consideration the usual manner of expressing messages sent by this means."

In case of Western Union Telegraph Company v. W. E. Coffin, Coffin resided at Tyler, about 500 yards from the public square. He had resided in that town about two years, and was well known to most of the business men of the town. Coffin married the sister of R. Brackin, and thought as much of him as if he had been his brother. In March, 1892, the following message was delivered to the agent of the telegraph company at Lancaster, Tex., at the hour of 7 a. m.:

"W. E. Coffin, Tyler, Texas.

"R. Brackin will be buried tomorrow. Come at once. Answer.        J. M. Knight."

The message was promptly transmitted to Tyler by the telegraph company, and put in the hands of a messenger boy, to be delivered to Coffin. The boy took it to the hotel and inquired of the clerk if he knew Coffin, and was told that the clerk knew him, that he was a traveling man, and was not in the city, but that he stopped at that hotel when in the city, and would probably be in that night. The boy left the message with the clerk, who receipted for it. The man whom the clerk, knew was C. H. Coffin, but he did not, at the time, remember the difference in the initials. The message was never delivered to W. E. Coffin, who was at home that day, and if the message had been delivered, could and would have gone to the burial of his said brother-in-law. Coffin sued the telegraph company, and recovered judgment, which was affirmed by the Court of Civil Appeals. There were three assignments of error in the Supreme Court, which, in substance, raised one question, viz.: Did the facts proven entitle plaintiff to recover in this case? The

court, in passing upon the case, used the following language:

"First. That the person for whose benefit a telegraphic message is sent, and who is named in the message, or of whose interest therein notice is given to the company at the time, may sue upon it in case of injury from the negligence of the telegraph company.

"Second. That the telegraph company is chargeable with notice of the relationship which actually exists between the parties named, whether disclosed by the terms of the message or not.

"Third. That the company receiving the message must take notice of the purposes for which the message was sent, as disclosed by the language of the message, and, in case of messages relating to serious sickness, or death, it must be held to know that the person for whose benefit it is sent has a serious interest in the prompt delivery of it.

"Fourth. From the fact of blood relationship, if it exists, a jury may, without other proof, infer that mental anguish was occasioned by the failure to be present at the bedside of the sick or at the funeral of the deceased relative.

"Fifth. That mental anguish, whether accompanied by injury to the person or not, is a proper element of actual damages, and, when caused by the negligence of the telegraph company, in failing to deliver a message, compensation therefor may be recovered by the injured party."

[2-5] From the principles announced in the above cases, we are led to the conclusion that the petition in the instant case alleged a cause of action against the telegraph company. In this case the message called on W. A. Goodson to send Oscar at once to wait on his father; that Lida was sick. It certainly plainly put the company upon notice that Oscar was to be sent to his father, and request was for appellant to send him. The addressee, under the authorities, is presumed to be the person for whose benefit the message is sent; and, where the message relates to a sick person, the further presumption is that the addressee is presumed to have a serious interest in the condition of that person, taken in connection with the fact that the company is charged with notice of the relationship which actually exists between the parties named in the message, whether such relationship be disclosed by the telegram or message, or not. The company had notice that appellant was concerned in sending his brother, Oscar, to wait upon their father, that their father needed such waiting upon; that their sister was sick and unable to render the service needed by their father; and that a failure to deliver the message would probably deprive appellant of the opportunity of going himself and of sending his brother, Oscar, to Stockdale for that purpose. Appellant was the person addressed, and, as said above, the law presumes that he was seriously concerned, at least in having Oscar to go to wait upon the person named in the message as his father, and which the company is charged with knowledge was his father, as well as the father of appellant. While the message does not expressly say that appellant's father is sick, enough is stated to indicate that for some reason he was so helpless as to need waiting upon. If the company desired to know why he needed waiting upon, the duty rested, in this case, upon the company to make that inquiry, for we hold that enough was stated in the message to put the company upon inquiry. It has been well said that where the company has notice of the main facts, or is put upon notice of such facts by the message itself, then the company is chargeable with the additional notice of incidental matters that it might have ascertained by proper inquiry, and that a message on its face, indicating that it is important, without details, is sufficient to put upon the company the duty of making inquiry, if it desires additional information, which is related to the main facts recited in the message. The authorities cited we understand to hold the opinion above expressed.

Appellee insists that the case of Telegraph Company v. Kibble, 53 Tex. Civ. App. 222, 115 S. W. 643, is at variance with the rules above stated. In that case, the message read: "Come at once." Among other things, in passing upon that case, the Galveston court used the following language:

"Such duty is required [that is, on the proposition that the message required the company to inquire into the purpose of it] when the general nature of the message is plainly disclosed by its terms or otherwise, and some collateral fact, such as the relationship of the parties, without which the damage is plain would not likely result"

—and, continuing, the court says:

"In all the cases referred to in support of this proposition, the general nature of the message was disclosed either by the terms or by information given to the agent at the time, as in the Cavin Case. We think that it is only in such cases that it is the duty of the agent to make inquiry, and that the telegraph company would be affected with notice of what would be learned by such inquiry."

In the instant case, the message discloses with clearness its general nature, and we do not see any conflict between our holding and the Kibble Case.

From the authorities above referred to, and the views above expressed, we are of opinion that it was error in the court to sustain a general demurrer to plaintiff's petition, and that the said petition sufficiently stated a cause of action, and we may say that, in our opinion, appellant, not only has a cause of action because he, himself, was deprived of going to his father's bedside and ministering to his wants, but that, in addition, he has a cause of action by virtue of the fact that he was deprived of the opportunity of sending his brother, Oscar, to wait upon their father when such nursing and attention was needed, to which the telegram called upon appellant to supply.

So believing, the cause is reversed and remanded for a new trial.

Reversed and remanded.