## JANUARY, 1920

WESTERN UNION TELEGRAPH COMPANY v. MRS. R. L. JOHNSON.

Application No. 11673.   Decided January 5, 1920.

(226 S. W., 671.)

1.—Telegraph—Mental Suffering—Notice—Relationship.

The law charges a telegraph company with notice of the relationship, if any, existing between all parties named in a death message, or between the persons named and those in the message referred to in such a way as to prompt inquiry, but not of the relationship to others of persons not so named or referred to; and, as respects the purpose of the message, with notice of such purposes as, having regard to such relationship and the usual manner of expressing such message, are disclosed by the communication or are fairly inferable from it.   (P. 3).

2.—Same—Interest in Message.

The telegraph company is charged with notice of the interest of the person addressed in the proper transmission of the message.   As to the sender, his interest must fairly appear from the message itself, or be disclosed by other information, for the telegraph company to be affected by it. But the company is charged with knowledge of the known or readily ascertained relationship of the sender to the persons named in the message, and of the sender's interest in its transmission arising from such relationship and the nature of the message.   (Pp. 3, 4).

3.—Same—Case Stated.

Plaintiff wrote and sent to the telegraph company for transmission a message: "Come at once.   Death message." signed "Mother."   The agent, who knew the parties, rewrote and dispatched the message as follows:   "Mr. Johnson not expected to live.   Come at once." signed "Mother."   It was addressed to her son Smith, the step-son of Johnson, her husband.   *Held*, that the company was charged with notice of plaintiff's interest in the transmission of the message and was properly held liable for her mental suffering through being deprived, by its default, of the aid and comfort of her son's presence at the death and burial of her husband.   (Pp. 2-8).

4.—Cases Discussed.

Western U. Tel. Co. v. Luck, 91 Texas, 178, distinguished and limited. Western U. Tel. Co. v. Carter, 85 Texas, 580; Western U. Tel. Co. v. Adams, 75 Texas, 531; Western U. Tel. Co. v. Kirkpatrick, 76 Texas, 217; Western U.

1

Tel. Co. v. Potts, 82 Texas, 546; Western U. Tel. Co. v. Nations, 82 Texas, 539; Western U. Tel. Co. v. Simmons, 93 S. W., 686; Western U. Tel. Co. v. Landry, 134 S. W., 849; reviewed and discussed.   (Pp. 6, 7).

Application to the Supreme Court for writ of error to the Court of Civil Appeals for the Eighth District, in an appeal from Dawson County.

Mrs. Johnson sued the telegraph company and recovered judgment for $1000.  On defendant's appeal the judgment was affirmed (218 S. W., 781) whereupon the appellant applied for a writ of .error, which was refused, the Supreme Court delivering thereon the opinion following.

*Veale & Lumpkin,* for applicant.—In the absence of any notice save the information conveyed in a telegraphic message, the company is not chargeable with notice of any injury which may be occasioned by the failure to transmit and deliver such message.   Jones on Telegraph and Teleph., 2d Ed., sec. 548; Western U. Tel. Co. v. Luck, 91 Texas, 197; Western U. Tel. Co. v. Luck, 41 S. W., 469; Western U. Tel. Co. v. Coffin, 88 Texas, 94; Western U. Tel. Co. v. Wilson, 97 Texas, 22; Western U. Tel. Co. v. Crow (.Ark.) 152 S. W., 1015; Western U. Tel. Co. v. Bell, 90 S. W., 714.

*McGuire & Warren,* for appellee, cited: Potts v. Western U. Tel. Co., 82 Texas, 546; Western U. Tel. Co. v. Carter, 85 Texas, 580; Western U. Tel. Co. v. Simmons, 93 S. W., 686; Western U. Tel. Co. v. Bell, 90 S. W., 714; Western U. Tel. Co. v. Barrett, 207 S. W., 976.

Mr. Chief Justice PHILLIPS delivered the opinion of the court.

The application for writ of error is to review the affirmance of a judgment in favor of Mrs. R. L. Johnson in a suit against the telegraph company for mental suffering in being deprived of the aid and comfort of her son following the death and through the burial of her husband, because of the company's negligent failure to promptly deliver to the son a message sent by her from Kosse, Texas, to him at La Mesa, Texas, advising of the husband's approaching death and requesting the son to immediately come to her.

As originally delivered by a Mr. Mills for Mrs. Johnson to the telegraph company for transmission, the message, addressed to J. W. Smith, the son, read:

"Come at once.  Death message.
(Signed) Mother."

The company's agent was well acquainted with Mrs. Johnson and her husband.  On receiving the message he re-wrote it so as to have it read:

"Mr. Johnson not expected to live.
Come at once.
(Signed) Mother."

The telegraph company maintains that the message afforded it no notice that a probable consequence of a failure to effect its prompt delivery would be the suffering of mental distress by Mrs. Johnson in being deprived of her son's presence. It urges the case of [Western U.] Telegraph Company v. Luck, 91 Texas, 178, 66 Am. St., 869, 41 S. W., 469, as decisive of the proposition. Unless the company can justly be held to have had such notice, it is not liable.

The primary thing about a message of this nature is its purpose— the object of it as fairly disclosed by the communication and in view of the relationship between the persons whom it concerns. The damages recoverable in these actions are such, and such only, as may be deemed to have been within the contemplation of the parties when the contract was made for the transmission of the message. Hence, it is the purpose of the message as known to the parties, or as justly held to have been known, which must determine what damages may reasonably be regarded as within their contemplation.

The relationship between the persons whom such a message concerns, is what prompts the sending of it. The purpose must accordingly be gained in the light of their relationship. As revealing the purpose it is in most cases the controlling element. It is for this reason that the law charges the telegraph company with notice of the relationship, if any, existing between all the persons named in the message (Western U. Telegraph Company v. Carter, 85 Texas, 580, 34 Am. St., 826, 22 S. W., 961), or between the persons named and those in the message referred to in such a way as to prompt inquiry (Western U. Telegraph Company v. Adams, 75 Texas, 531, 6 L. R. A., 844, 16 Am. St., 920, 12 S. W., 857); but not of the relationship to the others of persons not so named or referred to (Western U. Telegraph Company v. Kirkpatrick, 76 Texas, 217, 18 Am. St., 37, 13 S. W., 70). Being so charged in law with respect to notice of the relationship between the persons concerned in the message, the company, as respects the purpose of the message, is charged by law with notice of such purposes as, having regard for such relationhip and the usual manner of expressing such messages, are disclosed by the communication or are fairly inferable from it.

In most instances such messages are sent for the benefit of the person addressed—to afford him opportunity of coming to the bedside of the stricken relative or attending his obsequies in the case of death. Because of this common experience, it is, as Judge Henry expressed it in the Adams Case, "a common sense suggestion" that the person addressed has a serious interest in the message. Accordingly, there has grown up the rule that the telegraph company is charged with notice of his interest. He may in fact have none in the sense that the message is for his benefit. It may be addressed to him, as is sometimes the case, merely as a quick or convenient method of

communicating its contents to others as its real beneficiaries. In other instances, the addressee's want of near relationship to the other persons concerned denies him any beneficial interest. Notwithstanding this, the rule exists for his protection. It in all cases subserves the real purpose of the message. Whether the message be for his benefit or not, for the fulfilment of its purpose the addressee has, always, an interest in its prompt delivery. Generally, he has a serious interest in the message. Therefore the rule in his favor.

As to the interest of the sender, the same rule does not obtain. It does not, because he is not so generally intended as the beneficiary. The law takes account of this difference in common experience and therefore does not presume for him an interest in the message, as it does for the addressee. Frequently the message is in nowise for his benefit. It is sometimes sent by him purely for the accommodation and benefit of others. Hence, his interest must fairly appear from the message itself or be disclosed by other information, for the telegraph company to be affected with notice of it.

The rule, however, which charges the telegraph company with notice of whatever relationship exists between all persons named in the message or so therein referred to as to prompt inquiry (Telegraph Company v. Carter and Telegraph Company v. Adams), necessarily includes him. It is generally because of relationship that he is the sender. While the law will not presume his interest, yet it is common experience that many times he has a serious interest; and when he has, there can be no just reason for requiring that the message descend to a detailed recital of his relationship. The message, it should be remembered, is not to the telegraph company. Relationship in some degree between all the persons named in the message is ordinarily to be presumed; the nature of such a message indicates it sufficiently to prompt inquiry; and therefore the law charges the telegraph company with notice of it as it could readily have been ascertained. Accordingly, the message as an instrument of notice to the company of the sender's interest must in reason be interpreted in the light of the company's presumable knowledge of the sender's relationship to the other persons named in it or so referred to as to prompt inquiry.

Here, under the rules stated, the knowledge which the telegraph company through its sending agent necessarily had, as disclosed by the message itself, was that a mother was advising her son of her husband's impending death and requesting that the son immediately come to her. That the primary purpose of the message was to summon the son to the mother, is shown by the original form of it. As originally written and delivered to the agent, its opening sentence was an urgent request for the son to come. This disclosed that its chief object was to convey such request, the cause of the request being shown by the added statement, that the telegram was a death message. Only as

re-written by the agent was the mother's husband named as the dying person.

The mother's interest in the message was obvious. Any one of ordinary sensibilities, standing in the place of the company's agent, with the original message before him, re-writing it in. the light of familiar acquaintance with the sender and her dying husband, aware of its urgent nature, and advised by its terms that it was a pressing, solicitous request from the mother for her son to come to her because of an ordeal of death whose sorrow and loneliness she was about to face, would have been impressed, we think, with the mother's interest in the message.

The fact that the son was not a near relation of the dying man, as shown on the face of the message by the difference in name, but only a step relation,—of which the telegraph company was charged with notice,—would of itself negative the idea that the message was primarily for his benefit. It would naturally suggest, in connection with the mother's close relationship and her consequent natural distress, that she was the person chiefly concerned in the message and that its main purpose was to bring the son to her assistance.

Whatever, under such circumstances, would have been a natural, probable result to Mrs. Johnson from a negligent failure by the company to make prompt delivery of the message, thereby preventing the son's reaching her until after her husband's burial, may be justly deemed to have been within the company's contemplation. It will not be held to the anticipation of an unnatural or improbable result.

The mother's desire for the immediate presence of her son was a natural one. It arose naturally from the stress of her situation. All who come under the burden of such extreme affliction ordinarily turn to their nearest kindred for comfort and consolation. Few, whatever their fortitude, undergo its hard trial with stoicism, or wish to tread the wine-press of its inexorable sorrow, alone. It is but human to crave at such a time the solace and sympathy of the presence of those standing in close relationship, and it was but natural for this mother, with her husband dying, to turn to her son for the alleviation of her distress. It is the mother's grief arising naturally from the close relationship to her husband—her situation and her need that are to be considered here. Not the son's want of near relationship to the dying man. It is as clearly a natural and probable consequence that, seeking the aid of her son under such circumstances, she would suffer mental distress in its deprivation. Her desire for his presence would reasonably be an extreme one. It would be only natural that in the same degree she should experience mental distress in being denied his presence. Disappointment is commonly in proportion to the desire. It would be contemplated as a probable result by any one having knowledge of the mother's condition and of her desire and effort to

obtain her son's aid. With the knowledge possessed by the telegraph company as to the purpose of the message, it was such a result as might reasonably have been expected as a consequence of its negligent failure to make prompt delivery of the message.

The Luck Case (91 Texas, 178) does not control this case, though similar to it in some respects. There the message was addressed to Bertha Wincker, the sender being Mina Luck, her mother. It read: "Luck very sick; come home at once. (Signed) Mina Luck." Luck, the person referred to in the message, was Mina Luck's husband, the step-father of Bertha Wincker. It was held that the message gave the telegraph company no notice of the interest of Mina Luck as the mother of Bertha Wincker, and that the company could not be held to have anticipated that Mina Luck would suffer mental anguish if through its negligence deprived of her daughter's consolation following the death of the husband, Luck. The decision is based on the theory that the message gave the company no notice of the relationship between Mina Luck and Bertha Wincker, or that its purpose was to summon the latter to attend her mother in her distress.

Here, in addition to being charged by law with notice of the relationship between the sender and the addressee as parties to the message and distinctly named in it—under the rule announced in Telegraph Company v. Carter, and re-announced, though not applied, in the Luck Case, that under a message relating to sickness and death "the telegraph company is chargeable with notice of the relationship that exists, if any, between all parties named in the message"—the company had notice from the face of the message that Mrs. Johnson, the sender, was the mother of the addressee. Furthermore, as already said, the message in its original form was clearly a summons from the mother to her son. The message gave notice, as plainly as if blazoned upon it, that she was in distress. The object of the urgent summons could not under such circumstances be mistaken. It was to bring the son to the mother's aid, and the company was bound to know it.

We are unwilling to extend the Luck Case as an authority on this question beyond its own facts. We decline to hold that under a message from a mother to her son, advising of her husband's death or impending death, and asking that the son come immediately to her, the telegraph company will be relieved of any anticipation of mental distress on the mother's part in being deprived of the son's aid and consolation as the result of its negligence.

In [Western U.] Telegraph Company v. Potts, 82 Texas, 546, 18 S. W., 604, in which the opinion of the Commission of Appeals was adopted by this court, and which was not overruled in the Luck Case, though the Nations Case (Western U. Tel. Co. v. Nations, 82 Texas, 539, 27 Am. St., 914, 18 S. W., 709) was, the message was from

Mrs. M. E. Potts, addressed to William McCann, her brother, reading, "Come at once; Mr. Potts is not expected to live. (Signed) M. E. Potts." Mr. Potts was the husband of the sender. The sister, Mrs. Potts, was held entitled to recover for mental suffering in being deprived of her brother's aid and consolation in her husband's death through the telegraph company's negligence.

In [Western U.] Telegraph Company v. Simmons, 93 S. W., 686, decided by the Court of Civil Appeals for the Fourth District in an opinion by Chief Justice Fly, this court, after the decision of the Luck Case, on application for writ of error considered the question as to whether a wife should be permitted to recover for mental anguish in being deprived of the presence and consolation of her husband under a message from the wife to the husband advising of the death of one and of the serious illness of another of their children. The Court of Civil Appeals had held that the suffering of such mental distress by the wife was a natural consequence of a negligent refusal to transmit the message to the husband. In the application, the Luck Case was cited as authority to the contrary. A writ of error was refused.

In [Western U.] Telegraph Company v. Landry, 134 S. W., 849, by the refusal of a writ of error, a similar recovery by a daughter in being denied the aid and consolation of her father and a brother under a message from her to the father advising of her husband's critical illness and saying, "Send some one to me," was sustained.

In neither the Potts Case nor the Landry Case did the message designate the relationship between the sender and the addressee. Nor did the message indicate it beyond its nature as a death message and a request for the addressee to come to the sender expressed in terms no more urgent than those in the message here. Information of it was not otherwise given the telegraph company. Both decisions necessarily proceed under the rule that the company was chargeable with notice of the relationship, because between parties to the message. Otherwise, it could not have been held in either case that the sender's mental distress was a consequence to be anticipated by the company.

It would be difficult to make any real distinction, as a reasonable probability, between the mental distress of a sister, a wife and a daughter in being deprived of the aid and consolation of a brother, a husband and a father under the circumstances of these respective cases, and the mental distress of a mother in being denied the aid and comfort of her son in the death of her husband.

If there be any distinction and these decisions be laid aside, we hold, as founded on common reason and usual human experience, that the suffering of such distress by a mother in having sought and being deprived of her son's aid at such a time, would be ordinarily

a natural result, and therefore one to be reasonably anticipated by a telegraph company under such a message as is presented here.

A writ of error is refused.