THE WESTERN UNION TELEGRAPH COMPANY V.
W. L. HOMER ET AL.

No. 7966. Decided November 25, 1942.
Rehearing overruled January 6, 1943.
(166 S. W., 2d Series, 684.)

*Thompson & Barwise* and *Fred L. Wallace,* all of Fort Worth, and *Francis R. Stark,* of New York City, N. Y., for petitioner.

There being no basis for the cause of action and the alleged claim for damages, based upon a mistaken belief that something might have happened that did not occur, was not that character of mental distress which can form the basis of recovery under the laws of this State. Western U. Tel. Co. v. Brooks, 115 Texas 168, 279 S. W. 443; Western U. Tel. Co. v. Henry, 87 Texas 165, 27 S. W. 63; Radford Gro. Co. v. Jamison, 221 S. W. 998.

*Clark & Stegall, Clark, Craik, Burns & Weddell* and *Chester Clark,* all of Fort Worth, for respondent.

The defendant being informed at the time the message was delivered to it, of the physical condition of Mrs. Homer, and of the importance that the message be delivered promptly, the injury was within the contemplation of the parties at the time said contract was entered into and sufficient to support a cause of action for the damages for the injuries resulting from the negligent breach of the contract. Daniel v. Western U. Tel. Co. 61 Texas 452; Markham Irr. Co. v. Brown, 292 S. W. 863; Humble Oil & Refining Co. v. Wood, 292 S. W. 200.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit for damages for physical and mental suffering alleged to have been sustained by respondent, Mrs. W. L. Homer, because petitioner failed to deliver on time a telegram addressed to her. On jury findings favorable to respondents,

the trial court awarded them judgment for $400.00, which was affirmed by the Court of Civil Appeals at Fort Worth. 157 S. W. (2d) 659.

Mrs. Doris Bates, who was a daughter of the Homers residing in Fort Worth, left her son, then five years old, with the Homers, in Gainesville, with the understanding that they were to place him on the train on the evening of August 21, 1939, unless they received other instructions by Western Union wire before 9 P. M. On that day Mrs. Bates called petitioner's office at Fort Worth by telephone and, after being assured that the same would be delivered to Mrs. Homer before 9 P. M. that night, gave it the following message:

"Mrs. W. L. Homer, 200 Second Street, Gainesville, Texas. Bob may stay. Will write later." (Signed) "Doris."

The petition alleged that Mrs. Bates told the company's agent of her agreement with the Homers in regard to the return of the child and that unless the message was delivered before 9 P. M. that day he would be put on the train at Gainesville at 9 P. M. to return to Fort Worth; that Mrs. Bates further told petitioner's agent that Mrs. Homer had for years been afflicted with heart trouble and that any excitement, strain or fright *affected her heart and caused her to become sick;* that, although she was assured that the telegram would be delivered as directed, it was not delivered until the next morning; that because thereof the child was put on the train at Gainesville at 9 P. M.; that Mrs. Bates, relying on petitioner's promise to deliver the telegram, did not meet the train at Fort Worth, and the child was required to "hang around the station," after reaching Fort Worth, until after midnight; that when Mrs. Homer received the telegram after 8 A. M. the next day, she realized that Mrs. Bates had not met the train; that she, Mrs. Homer, "suffered the most severe and excruciating mental anguish *in not knowing what had become of her grandchild, that she became physically sick* and sustained a nervous shock which confined her to her bed for several weeks in a highly nervous state *causing her to suffer great physical pain and suffering*" as well as mental anguish; that, because of delay in getting telephone connection with Mrs. Bates, it was not until after 11:00 o'clock A. M. on August 22, that she learned that the child was then safe with his mother; and that during that interval Mrs. Homer *"suffered the most severe excruciating pains* and mental anguish." (Italics ours.)

The jury found that petitioner agreed to send the telegram from Fort Worth to Mrs. Homer, at Gainesville, Texas, and to deliver it to her before 9 o'clock P. M. on August 21, 1939; that Mrs. Bates authorized the sending of the telegram in reliance upon petitioner's assurance that it would be so delivered; that the telegram was not delivered to Mrs. Homer until 8:15 A. M. August 22; that in failing to deliver the telegram as agreed, the petitioner was guilty of negligence, which proximately resulted in "injuries" to Mrs. Homer, which $400.00 would compensate; that Mrs. Bates was not negligent in failing to notify Mrs. Homer of the child's arrival in Fort Worth prior to Mrs. Homer's receipt of the telegram, and that respondents were not negligent in failing to ascertain prior to such time whether the child had so arrived.

The petitioner's principal complaint is that both the pleadings and the undisputed evidence shows no injuries suffered by Mrs. Homer except such as resulted from fear and apprehension that something had happened to the child which, in fact, did not happen. This question was raised in the trial court both by general demurrer and by motion for an instructed verdict. At petitioner's request, the trial court instructed the jury that "in arriving at your answer to Special Issues No. 8, 9 and 10, you are not to take into consideration any mental anguish of plaintiff Mrs. W. L. Homer, * * which she may have suffered as the result of unfounded fears as to what might have happened to her grandson, Bobbie Bates." Assuming (without deciding) that this instruction was correct and bearing in mind that the jury awarded only $400.00 damages in face of respondents' prayer for $2,500.00, we think this complaint is without merit, provided there was (1) any pleading in support of injuries, other than such unfounded fears, suffered by Mrs. Homer, and (2) any evidence in support thereof.

We think the allegations of respondents' petition, as outlined above, claim much more than mental anguish resulting from baseless fears, and that there is at least some evidence to support them. Mrs. Bates testified that around 5 o'clock, November 21, she decided to leave her child longer with Mrs. Homer; that she then called petitioner's office, explaining the situation and saying that if the message could not be delivered by 9 o'clock that night she did not want to send it because her mother had heart trouble and "I didn't want to cause her any undue excitement"; that, relying on petitioner's assurance

that the telegram would be delivered before 9 o'clock, she did not meet the train but she and her husband went to a show and did not return to their home until 11:30 that evening, when they were advised by a neighbor that there was a little boy at the station and "they were trying to get in touch with us"; that she and her husband then went to the station and found their boy at the "travelling agency" across the street "playing around as a child would"; that it was after 11 o'clock, the next morning, when she got in touch with her mother by telephone. Mrs. Homer testified that she got the telegram at about a quarter to 9 o'clock, on the morning of August 22; that it was "such a shock" to her that she was in bed for several days; that it was around 11:30 o'clock when she heard that the child was then at home with his mother; that *in the meantime she suffered mental and physical pain*—"the shock and the worry and all *not knowing what became of the child and he was so small, sent to a city like that in the night"*; that she did not recover immediately upon receipt of the news of her grandson's safe arrival in Fort Worth, but *was in bed several days because her heart was affected.*

■ In the face of the pleadings and the evidence which we have thus briefly reviewed, and the trial court's limiting charge, we would not be warranted in saying, as a matter of law, that all Mrs. Homer's injuries were the result of fear and apprehension that something had happened to the child which, in fact, did not happen. The child did arrive in Fort Worth, at night, with no one to meet him, and did remain in and around the station until after midnight without the presence and care of his parents. Mrs. Homer's fears to that extent were not unfounded; from 8:45 until around 11:30 the next morning she suffered because of the reality of that very situation. During that interval she suffered "shock," mental and physical pain, and worry and her heart was affected. These reactions surely were quite natural, in view of the child's tender age, and they put her in bed and so affected her that she did not recover immediately upon receipt of news of the safety of her grandson but had to remain in bed for several days. Under the jury's findings, these elements of Mrs. Homer's alleged injuries must be treated as realities which were within the contemplation of the parties when petitioner accepted the telegram and which it could reasonably foresee as likely to occur when it failed to deliver the telegram by the time specified. This brings the case squarely within the declaration in Western Union Telegraph Co. v.

Brooks, 115 Texas, 168, 279 S. W., 443, that "the suffering and anxiety of Mrs. Brooks cannot be held to be unreal and too remote because perchance her son, during two or three weeks of his pilgrimage home, had nothing seriously harmful happen to him and that he did not undergo any unusual suffering." Here nothing harmful happened to Mrs. Homer's grandson nor did he undergo any unusual suffering but, with mental anguish suffered as the result of unfounded fears eliminated from their consideration, the jury found that Mrs. Homer suffered mental and physical pain as respondents alleged. The facts alleged and proved distinguish the case at bar from McAllen v. Western Union Telegraph Co., 70 Texas, 243, 7 S. W., 715, and like authorities, wherein it is said that the damages claimed could not reasonably be foreseen as likely to arise from failure promptly to deliver the telegram. Therefore, the trial court did not err in overruling petitioner's general demurrer and its motion for a peremptory instruction.

■ Petitioner contends that the respondents' petition states no cause of action because it does not allege that any consideration was paid or agreed to be paid for the transmission and delivery of the telegram. The proposition cannot be sustained. Petitioner is a public service corporation engaged in the transmission of information for hire. Although it customarily charges for its service according to a stated schedule of rates, it may render its service gratuitously, as was the case in Western Union Telegraph Co. v. Snodgrass, 94 Texas, 284, 60 S. W., 308. Consequently, if it is alleged that the telegraph company accepted a telegram and agreed to transmit and deliver it to the addressee, it is unnecessary to allege that any consideration was paid or agreed to be paid. In the case last cited, the petition did not allege payment of any money to the company or that anyone promised to pay it to transmit the message. The undisputed testimony showed that the sender, a sister of the addressee, worked for the company, and that its manager allowed her to send the message free. The Supreme Court said it was not necessary for the plaintiff either to allege or prove, as a condition to recovery, payment or promise of payment of anything to the company either by himself or his sister to transmit the telegram.

Of course, if its stated toll is tendered, the company is bound to accept the message and to use ordinary care to transmit and deliver it. Western Union Telegraph Co. v. Snodgrass,

supra. So, if the petition does not allege an express under-taking by the company to accept and deliver the telegram, it must allege that a consideration was paid or tendered. This distinguishes Western U. T. Co. v. Smith (Civ. App.), 133 S. W., 1062; Lewis v. Southwestern T. & T. Co. (Civ. App.), 59 S. W., 303, and Southwestern T. & T. Co. v. Payne (Civ. App.), 210 S. W. 988, cited by petitioner, from Western Union Telegraph Co. v. Snodgrass, supra. If the petition alleges neither an express promise to transmit the message nor payment of consideration, it states no cause of action. Western U. T. Co. v. Henry, 87 Texas, 165, 27 S. W. 63.

The petition in this case plainly alleges an acceptance of the telegram and a definite undertaking to transmit and deliver the same by a given time. Therefore, it was not necessary to allege a consideration paid or promised. Western Union Telegrap Co. v. Snodgrass, supra; Western U. T. Co. v. Johnson (Civ. App.), 218 S. W., 781 (error refused, by written opinion in 111 Texas 1, 226 S. W. 671, without the point being considered) ; Western U. T. Co. v. Gold (Civ. App.), 235 S. W., 331.

■ Petitioner urges that the trial court erred in not defining "mental anguish" in his charge to the jury. We think there was no error in that regard, because the plaintiffs alleged and proved other special damages and the jury so found. As already stated, the Homers alleged that, as a part of the conversation between the sender and petitioner's agent when the telegram was accepted, the agent was told that Mrs. Homer had for years been afflicted with heart trouble and that any excitement, strain or fright affected her heart and caused her to become sick, for which reason Mrs. Bates did not want to send the message unless it could be delivered before 9 P. M.; that the telegram was not delivered until after 8 A. M. the next day, when, because she did not know what had become of her grandchild, Mrs. Homer became *physically* sick and *sustained a nervous shock* which confined her to her bed for several weeks in a highly nervous state *leaving her to suffer great physical pain and suffering*. Mrs. Homer testified that after she received the message and before she heard what had become of the boy, she suffered *mental and physical pain*, from which she did not recover immediately but was confined to her bed for several days *because her heart was affected*. That recovery hinged on these elements of special damage seems to have been recognized by the trial court, because (except in the limiting charge against

consideration of mental anguish suffered as a result of unfounded fears as to the fate of her grandson) the charge nowhere uses the phrase "mental anguish." It merely uses the term "injuries" and allows the jury to assess the damages at such sum as would compensate plaintiffs for the *physical and mental suffering* endured by Mrs. Homer. Thus other special damages actually suffered by Mrs. Homer were alleged and proved and found to have been within the contemplation of the parties at the time the contract was made. 40 Tex. Jur., sec. 42, p. 546; Townes' Law of Torts, p. 118. See McAllen v. Western U. T. Co., supra. Consequently, we see no injury to petitioner in the refusal of the trial court to define "mental anguish."

The judgment of both courts below is affirmed.

Opinion adopted by the Supreme Court November 25, 1942.

Rehearing overruled January 6, 1943.