WESTERN UNION TELEGRAPH COMPANY v. G. S. SWEARINGIN.

No. 1263. Decided February 8, 1904.

**1.—Telegraph—Death Message—Damages Not Remote.**

A message from Mrs. Swearingin to Green Swearingin: "Come; Frank is dead," was sufficient to enable the company to contemplate and to make it responsible for damages caused by its delay in delivery, which prevented the receiver from sending notice that he was coming and securing postpone- ment of the funeral of his son till his arrival. (Pp. 294-296.)

**2.—Cases Distinguished.**

Western U. Tel. Co. v. Norris, 25 Texas Civ. App., 43, followed, and West- ern U. Tel. Co. v. Linn, 87 Texas, 7; Western U. Tel. Co. v. Motley, 87 Texas, 38; Western U. Tel. Co. v. Stone, 27 S. W. Rep., 144, distinguished. (P. 295.)

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Comanche County.

*Geo. H. Fearons, Stanley, Spoonts & Thompson,* and *N. L. Lindsley,* for appellant.—The proof showed that even if the said telegram had been promptly delivered, the plaintiff could not have reached Fort Worth in time to have been present at the burial of his son, but his said failure would have necessarily been the result of other causes, and because it was not within the contemplation of the defendant or of the plaintiff, or of the said Stewart, at the time the said telegram was sent, that plaintiff would have wired back to secure the postponement of the funeral, or that the funeral would take place before the plaintiff could have arrived unless he had wired that he was coming and asking that the funeral be postponed. Telegraph Co. v. Linn, 87 Texas, 12; Tele- graph Co. v. Motley, 87 Texas, 38.

*G. H. Goodson,* for appellee.—A telegraph company will be held lia- ble for results that might have been avoided by action to be taken by

the party himself or some third person, when the message is such as to reasonably indicate that such action is called for as a natural consequence of the information contained, and the action such as in the course of events would naturally follow upon the information given by the message. Lowery v. Telegraph Co., 60 N. Y., 203; Smith v. Telegraph Co., 83 Ky., 104.

The action that would have taken place in this case on the part of Swearingen and Stuart, from which Swearingen could have attended the funeral of his son, was such as brought this case within the meaning of the foregoing decisions. In that respect this case is exactly similar in all respects as the Norris case, 25 Texas Civ. App., 43. The facts in the Norris case are set out showing a similar state of facts to this case, and the court there held that the evidence of those facts was competent, material, and relevant, and related to things which very naturally would have occurred and must be held to have been within the contemplation of the parties interested in emergencies of that kind.

GAINES, Chief Justice.—This is a certified question from the Court of Civil Appeals for the Second District. The certificate is as follows:

"In the above cause now pending before this court upon a motion to certify, upon the following facts, we held that appellee's damages were not too remote but were in contemplation of the parties at the time of the sending of the message hereinafter referred to, and were properly recoverable in this suit.

"Appellee's son was killed at Fort Worth, Texas, August 1, 1899. At about 1 o'clock p. m. of that day one J. M. Stuart, acting for the wife of the deceased, delivered to appellant at its Fort Worth office the following message: 'Fort Worth, Texas, Aug. 1st, 1899.—To Green Swearingin, Comanche, Texas: Come; Frank is dead. Mrs. Swearingin.'

"Stuart paid the charges, and the company undertook the delivery of the message, but upon ascertaining that Green Swearingin did not live within the established free delivery limits of the town of Comanche, a service message was returned to the Fort Worth office to that effect, and Stuart was notified that the company would not undertake the delivery of the message to Swearingin at his home in the country without payment or guaranty of payment of the sum of $2 extra charges. Stuart guaranteed this sum, but the message was not delivered until after the burial. If the message had been properly transmitted and delivered, appellee would have received it in time to have left Comanche at 9 o'clock a. m. on August 2d, and would have notified Stuart of his departure, and would have reached Fort Worth at 1:30 o'clock p. m. of the same day, and in time to have attended the burial of his son. By reason of the failure to hear from Swearingin, however, Stuart concluded that he was not coming and buried the remains at 11 o'clock a. m. on August 2. If Stuart had received notice that Swearingin was on his way to Fort Worth, he would have held the body until his arrival.

"Upon the authority of Western Union Telegraph Co. v. Norris, 1 Texas Ct. Rep., 685, in which a writ of error was refused by your honors, we held as above indicated. Appellant insists that this holding is in conflict with the holding of the honorable Court of Civil Appeals for the Third Supreme Judicial District in the case of Western Union Telegraph Co. v. Stone, reported in 27 S. W. Rep., 144, and we therefore deem it our duty to grant the motion and to certify to your honors whether or not we were in error in our said holding."

We are of opinion that the Court of Civil Appeals correctly held that the damages in this case were not too remote. The point is ruled by the decision in the case of Western Union Telegraph Company v. Norris, 25 Texas Civ. App., 43, in which an application for a writ of error distinctly presenting the question was refused by this court. As to this matter the two cases are not distinguishable in principle.

The case of Western Union Telegraph Co. v. Stone, 27 S. W. Rep., 144, did not come to this court, but the opinion in that case is based upon the decisions of this court in Western Union Telegraph Co. v. Linn, 87 Texas, 7, and Western Union Telegraph Co. v. Motley, 87 Texas, 38, in which it was held that the damages were too remote to authorize a recovery. In the Linn case, the telegram was: "Grace is very low. Can you come and bring Maud?" and was signed "Kate." In that case, as in this, if the message had been promptly delivered, the plaintiff could not have been present at the funeral at the time it actually took place; but it was averred and proved, that, if the delivery had been made according to the contract, he would have given notice of his coming and that the burial would have been postponed until his arrival. It was there held that the message was sufficient to notify the company that there was a relationship between the plaintiff and the person mentioned therein; that the latter might die; and that he might by a failure to deliver it be deprived of the opportunity to attend the funeral. But it was also held that it did not apprise the company that "Grace," the person mentioned, had a husband; that if the message had been promptly delivered the plaintiff would have advised the latter of his coming, and that the funeral would have been postponed until his arrival. The Motley case involved the same principle as the Linn case, but, according to the testimony, the contingencies upon which the plaintiff would have succeeded in being present at the funeral were still more remote. In the Stone case, the message was: "Your mother died today. Funeral on Wednesday." There also the plaintiff could not have attended the funeral on the appointed day had the message been promptly delivered; but he sought to recover on the ground that if it had been so delivered, he would have sent notice of his coming and the funeral would have been delayed. There the message showed upon its face that the time of the funeral was already fixed, and the telegraph company could not properly have been held to have foreseen that any postponement was contemplated.

In the present case it seems to us the effect of the language of the

message is quite different: "Come; Frank is dead." These words give notice of the death of the person mentioned, and also indicate not only the desire of the sender that the plaintiff should attend the burial, but also a confident expectation that he would do so. Under such circumstances, we are of opinion that it ought to have been foreseen that upon the delivery of the message there might be a necessary delay in starting upon the trip, and that the plaintiff would have notified the sender of the fact, and of his coming, and the probable time of his arrival, and that the funeral would have been accordingly postponed. Such, we think, would have been the natural and probable consequences if the message had been promptly delivered, and therefore they should be held to be within the contemplation of the parties to the contract.

As is indicated by what we have already said, we answer the question in the negative.