WESTERN UNION TELEGRAPH COMPANY V. R. L. SHAW.

No. 8169. Decided January 12, 1944.
Rehearing overruled February 9, 1944.
(177 S. W., 2d Series, 52.)

244

*Conner & Conner*, of Eastland, and *Francis R. Stark*, of New York, N. Y., for petitioner.

On the question of mental anguish resulting from the failure of the telegraph company to deliver the message on time and as to the proximate cause of the damage resulting from such delay. Western U. Tel. Co. v. Scarbrough, 68 S. W. (2d) 1027; Western U. Tel. Co. v. Coffin, 88 Texas 94, 30 S. W. 896; Western U. Tel. Co. v. Mobley, 206 S. W. 833

*Turner & Seaberry*, of Eastland, for respondents

On the issues involved cited: Western U: Tel. Co. v. Johnston, 210 S. W. 516; Western U. Tel. Co. v. Taulbee, 20 S. W. (2d) 232; 40 Texas Jur. 741; Herring v. Western U. Tel. Co., 108 Texas 77.

MR. JUDGE FOLLEY, of the Commission of Appeals, delivered the opinion for the Court.

This suit was filed by the respondent, R. L. Shaw, seeking damages from the petitioner, Western Union Telegraph Company, for alleged mental anguish suffered by him and his wife, Bessie Shaw, because of their being prevented from attending the funeral of their grandchild due to the failure of the petitioner to promptly deliver a message announcing its death. In a trial before the court without a jury the respondent recovered $500.00 for himself and $500.00 for the use and benefit of his wife. The Court of Civil Appeals at Eastland, in its original opinion, affirmed the recovery in behalf of the respondent for his own damages but reversed and rendered the judgment allowing him recovery for his wife. 173 S. W. (2d) 335. Upon motion for rehearing the Court of Civil Appeals modified its original holding by merely reversing and remanding the recovery in behalf of Mrs. Shaw, leaving undisturbed the recovery in favor of the respondent for his own damages. 173 S. W. (2d) 766. This Court granted a writ of error upon the application of the Western Union Telegraph Company.

Jack Shaw, son of the respondent and Bessie Shaw, resides at Beaumont, Texas, at which place the telegraphic message in question was delivered by him to the agent of the petitioner for transmission to his father who then resided at Cisco, Texas. The Beaumont office of the petitioner opens at 7 a. m. and closes at 12 midnight. Such opening and closing hours were shown to have been both reasonable and customary for cities like Beaumont. The Hotel Beaumont functions as a commission agent for the petitioner and during the business hours of petitioner accepts written messages from the public and sends them by messenger to the Western Union office at Beaumont for transmission, such office being located immediately across the street from the hotel. During the time the Western Union office is closed at night the hotel accepts messages for transmission after the Western Union office opens. At 1:10 a. m. on the morning of January 14, 1942, the thirteen-hour-old son of Jack Shaw died in a Beaumont hospital. About 2 a. m. of that same morning Jack Shaw filed the following telegram with the Hotel Beaumont addressed to his father, R. L. Shaw, at Cisco, Texas: "Baby died 1:10 A. M. Florence coming tomorrow. Will call you 10:00 P. M. at Paul's." The message, which was checked as a night letter, was delivered by the hotel to the Western Union office at 7:18 A. M. on January 14, 1942, and was transmitted from the Beaumont office of the petitioner to its Dallas office at 7:33 a. m. of the same day. The telegram was never delivered to the respondent and no trace was found of it beyond the Dallas office. The baby was buried at Beaumont sometime during the afternoon of January 14, the same day it died. The exact hour

of the funeral was not shown. The baby was a premature infant weighing only 4 1/2 pounds and lived only thirteen hours after its birth. The death certificate shows that the infant died of prematurity. The "Florence" referred to in the telegram is the stepmother of Jack Shaw's wife, and resides in Oklahoma. The "Paul" therein referred to resides at Cisco and is a brother-in-law of R. L. Shaw. The respondent was without a telephone in his home in Cisco. The brother-in-law had one. It was at the home of the brother-in-law that Jack Shaw was supposed to have called his father at 10 p. m. the night of January 14, 1942. Such call, however, was not made. The grandparents did not learn of the death and burial of the baby until about noon of January 15 when they talked to their son over the telephone. In such conversation they also learned that on the previous day Jack Shaw had delivered for transmission the message announcing the death of the infant.

The respondent made a general allegation that if the telegram had been delivered on the morning of January 14, 1942, he and his wife could and would have gone to Beaumont and would have reached there in time for the funeral. The testimony on this point is about as general as the allegation. The distance from Cisco to Beaumont was shown to be 398 miles. The respondent owned an automobile and presumably would have used it in going to Beaumont. He offered his own testimony that if the telegram had been delivered promptly he would have called his son by telephone and requested a postponement of the funeral. An objection to such testimony was sustained by the trial court and the respondent cross assigned this action as error. No other proof was offered or made on this question. Jack Shaw did not testify at the trial. The evidence fails to show whether the time for the funeral had been set at the hour the death message was filed for transmission, nor does it show anything relative to the funeral plans. There was no proof to the effect that if the telegram had been delivered promptly on the morning of January 14 the respondent would or could have reached Beaumont in time for the funeral during the afternoon of the same day, and no such contention is made by the respondent. He seeks to justify the recovery upon the theory that if the telegram had been delivered promptly he would have contacted his son by telephone and would have asked for and obtained a postponement of the funeral until he could have reached Beaumont. Although there was no showing that the funeral would have been postponed upon such request, we shall assume, for the purpose of this opinion, that if the telegram had been delivered promptly such request would have been made and that the postponement would have been effected.

■ The first question to be decided is whether the relation of grandparent and grandchild was such that, if the telegram had been the ordinary death message, the petitioner, from its language, would have been charged with knowledge that a grandparent would have suffered mental anguish by being deprived of viewing the remains, and attending the funeral, of the deceased grandchild. This question has been settled adversely to the contention of the petitioner in the case of Western Union Tel. Co. v. Porterfield, 84 S. W. 850, 851, in which a writ of error was denied by this court. In disposing of the matter in the Porterfied case, the court said:

"We have not been able to find any express decision holding in effect that a grandparent would be entitled to maintain an action for mental anguish suffered in a case of this character; but we have reached the conclusion that the relationship is not so remote but what the law might infer mental anguish to the grandparent that might be suffered, to some extent, equal to that of the parent who would be deprived of the privilege and consolation of viewing the remains of a deceased child. The ties of blood existing between such relations are almost as close, if not equally so, as that of brother and sister or brother and brother, which relationship falls within the line of adjudicated cases where recoveries are permitted. As a matter of fact, and it is one of common knowledge, the affection of prandparents for their grandchildren, especially when the latter are of tender age, usually equals that of the parents of the child."

In further support of this theory are the cases of Western Union Tel. Co. v. McMillan, 174 S. W. 918, and Western Union Tel. Co. v. Jenkins, 108 Texas 374, 194 S. W. 131. We thus conclude that the relationship of grandparent and grandchild is sufficient to fall within the rule above expressed.

■ The serious question presented in this case, however, is whether the language of the telegram was sufficient to charge the telegraph company with notice that the respondent would have desired to attend the funeral and would have secured a postponement thereof or, in other words, whether the negligence of the petitioner was the proximate cause of the damage asserted by the respondent.

It is the settled law of this State that when telegraphic communication relates to sickness or death there accompanies it a common-sense suggestion that it is of importance, and that the person addressed has in it a serious interest. Western Union Tel. Co. v. Adams, 75 Texas 531, 12 S. W. 857, 859, 6 L. R. A. 844, 16 Am. St. Rep. 920.

There is also a recognied principle of law in this State that where the language of the telegraphic message is sufficient in itself to disclose the general nature of the communication, it devolves upon the agent receiving the massage to make a reasonable inquiry of the sender as to the nature of the message, and by this means to gain fuller information as to the transaction or matter about which the message relates, and upon a failure to make such inquiry his principal will be charged with the information that such inquiry would have revealed. Western Union Tel. Co. v. True, 105 Texas 344, 148 S. W. 561, 562, 41 L. R. A. N. S. 1188, and authorities cited.

It is the further rule that a telegraph company is charged with notice of the relationship, if any, that exists between all persons named in a message, and with notice of such purposes as may be reasonably inferred from the language used in connection with the subject matter of the communication, taking into consideration the usual manner of expressing messages sent by such means. Western Union Tel. Co. v. Carter, 85 Texas 580, 22 S. W. 961, 962, and authorities cited; Western Union Tel. Co. v. Luck, 91 Texas 178, 41 S. W. 469.

■ The damages for which a telegraph company will be held liable upon failure to transmit and deliver a message with proper diligence, when the message concerns sickness or death, is ascertained by the same rules which govern in cases of breaches of other contracts. Western Union Tel. Co. v. Linn, 87 Texas 7, 26 S. W. 490, 492, 47 Am. St. Rep. 58. As applied to this character of case the wrongdoer shall be answerable for all the injurious consequences of his tortius acts, which, according to the usual course of events and general experience, were likely to ensue, and which, therefore, when the act was committed, he may be reasonably supposed to have foreseen and anticipated. McAllen v. Western Union Tel. Co., 70 Texas 243, 7 S. W. 715.

The general rule also obtains that a third person who is neither the sender nor the addressee of a telegram may sue where the messeage shows or the company is otherwise informed of his beneficial interest therein; but such third person cannot sue where the company had no notice either from the message or otherwise of his beneficial interest. 62 C. J. 192, Sec. 220. Under this rule, and in view of the record presented, no right of action of any sort accrued for the damage suffered by Mrs. Bessie Shaw, the grandmother, for she was not mentioned in the telegram nor was any showing made that the petitioner was otherwise informed of her beneficial interest. Western Union Tel. Co. v. Carter, 85 Texas 580, 22 S. W. 961, 34 Am. St. Rep. 826; Western Union Tel. Co. v. Kirkpatrick, 76 Texas 217, 13

S. W. 70; Southwestern Tel. & Tel. Co. v. Gotcher, 93 Texas 114, 53 S. W. 686. We think the Court of Civil Appeals correctly disposed of the claim for her damages in its original opinion wherein judgment was rendered for the petitioner as to this item, but erred in its subsequent action in reversing and remanding the judgment as to her damages. Having reached such conclusion, there remains only for our consideration the damages alleged to have been suffered by the respondent, R. L. Shaw. In connection with his damages there is also no showing that there was any information imparted to the agent of the petitioner other than that contained in the telegram and necessarily incident thereto.

■ In the application of the rules announced above we think it is further established that a telegraph company, upon receipt of the ordinary death message for transmission, is charged with knowledge that the addressee will probably desire to attend the funeral, that he will request a postponement of the same if necessary, and that his request will be granted. The cases which support this holding, which have been decided by this Court or with its approval, are the following: Western Union Tel. Co. v. Swearington, 97 Texas 293, 78 S. W. 491; Western Union Tel. Co. v. Johnson, Tex. Com. App., 210 S. W. 516; Western Union Tel. Co. v. Ford, 40 Texas Civ App. 474, 90 S. W. 677, writ denied; Western Union Tel. Co. v. Moran, 113 S. W. 625, writ denied; Western Union Tel. Co. v. Norris, 60 S. W. 982, writ denied.

In the Swearingin case the death message read: "Come, Frank is dead." In the Johnston case the telegram was: "Mother died at 6:30 p. m." In the Ford case the message stated: "Oliver Ford is dead. Come at once." In the Moran case the telegram recited: "Mr. Moran dead. Advise disposition of remains, details by letter." The Norris case telegram read: "Come on first train. John Norris is dying."

In the first four cases above mentioned a death is announced, and in the fifth the addressee was informed that a relative was dying, which, of course, suggested death. In all of those cases there was either an express or implied invitation to attend a funeral, but whether such invitation be express or implied the rule is established that the company, by the terms of such a message, is charged with notice that the addressee will probably desire to attend the funeral and that upon receipt of the message promptly delivered he will probably seek a postponement of the funeral, if necessary, to enable him to be present. If such a message had been filed for transmission in the instant case it

must be conceded that the telegraph company would have been placed upon notice and inquiry relative to the probable desires of the respondent to attend the funeral and of the probable postponement of it.

In this case, however, due to the language of the death message and the attendant circumstances, we think no such notice was imputed to the telegraph company. From the telegram itself it is apparent that the sender desired his father to remain in Cisco until 10 p. m. of the day the message was filed for transmission. He impliedly expressed such desire by stating that he would call the respondent at that hour at "Paul's," which place was admittedly in Cisco. If the funeral hour was then contemplated for the afternoon of January 14, it is evident the son did not expect his father to attend it. In the other hand, if the funeral was contemplated for the following day, it is very improbable, and in fact unreasonable, that the son would request his father to remain in Cisco until 10 o'clock that night if he expected him to be in Beaumont the next day. Therefore, it is obvious that the son did not expect the respondent to attend the funeral at all. Although this fact would not be necessarily conclusive as to the desires of the respondent, it is an element to be considered in determining whether the petitioner was put upon notice that the respondent would likely desire to attend the funeral or would seek a posponement of it. Also, under the rule above expressed to the effect that the telegraph company, accepting a death message, is charged with knowledge of all the attendant circumstances which a reasonable inquiry would have disclosed, we think it would be an unfair rule not to permit such company to use such imputed knowledge in defense of its negligent conduct. Therefore, in addition to the knowledge imputed by the language of the telegram, the petitioner should be credited with knowledge that the baby was prematurely born; that it weighed only 4 1/2 pounds; that it lived only 13 hours after its birth; and that its grandparents were 398 miles away, and had never seen it. Under these circumstances, we do not think it comports with the "usual course of events and general experience" to suppose that the respondent would have desired to attend the funeral or would have sought a postponement thereof, and, however reprehensible the negligent conduct of the petitioner may have been, we cannot say that the damages of the respondent were such as may have been reasonably within the contemplation of the parties or such as should have been foreseen and anticipated by the petitioner. In any event we conclude that the damages claimed are not the proximate result of the failure to deliver the message and are therefore too remote

to constitute a cause of action under well settled principles of law.

The judgments of the Court of Civil Appeals and of the trial court are both reversed and judgment is rendered for the petitioner.

Opinion adopted by the Supreme Court January 12, 1944.

Rehearing overruled February 9, 1944.