**WESTERN UNION TELEGRAPH CO. v.
HINSON.**

No. 5967.

Court of Civil Appeals of Texas. Amarillo.
June 20, 1949.

Supplemental Opinion June 27, 1949.

Rehearing Denied Aug. 29, 1949.

William H. Flippen, Dallas, and Randal & Gibson, Lubbock, for appellant.

Ratliff & Conner, Spur, for appellee.

PITTS, Chief Justice.

Appellee, Charles W. Hinson, filed suit against appellant, The Western Union Telegraph Company, seeking to recover damages alleged to have accrued to him by reason of the failure of appellant to deliver an urgent telegram announcing the arrival of the body of appellee's deceased son, who had been killed by enemy gunfire in World War II. Sgt. Wright D. Hinson, age thirty, was killed on March 31, 1943, in the north African area operations of the said war. At the request of his father, appellee herein, his body was shipped back to the United States. Appellee had not been notified by the War Department when the body would reach the United States but he had read in the newspapers when it would reach New York. He was advised about May 1, 1948, by the War Department that the body was enroute home and would be sent to Fort Worth, Texas, from which station it would be rerouted to its burial place. He had also been advised that he would be notified at least three or four days in advance of its arrival when to expect the body to reach Spur, Texas. As a part of the routine involved in such matters, appellee designated the Campbell Funeral Chapel

of Spur, Texas, as the funeral director to receive notice of the shipment of the said body and to receive the body at the depot upon its arrival in Spur, Texas. Appellee likewise contracted with Spencer Campbell, operator of the said funeral chapel, to receive such notice and to relay the same to appellee and to furnish to appellee all of the usual services in connection with the receiving of a body of a deceased member of the armed forces at the depot and the subsequent funeral services and burial thereof.

On May 28, 1948, at about 9:30 o'clock a. m. the proper military authorities, in consideration of the toll charged therefor, filed with appellant's Fort Worth, Texas, office the following message for delivery by appellant to the Campbell Funeral Chapel at Spur, Texas:

"Fort Worth Quartermaster Depot
Fort Worth, Texas
"May 28, 1948

"Campbells Funeral Chapel
"Spur Texas
"Remains Of Late Sgt Wright D Hinson Serial Number 38060855 Being Shipped To You Accompanied By Military Escort on Train Numbered One Hundred Seventeen Wichita Valley Railroad Leaving Fort Worth Ten Forty PM 2 June And Due To Arrive Spur Station One Forty Five PM Railroad Time 3 June Request You Make Arrangements to Accept Remains At Station Upon Arrival And That You Immediately Pass This Information On To Next Of Kin

"S. H. Partridge
"Lt Col QMC
"Chief A G R Division"

The said message was never delivered by appellant to Spencer Campbell or to the Campbell Funeral Chapel at Spur although a stipulation made by the parties and found in the statement of facts reveals that appellant's office at Spur, Texas, received the said message.

As a result of the failure to deliver the message by appellant, the body was not met at the depot upon its arrival at 1:45 o'clock p. m., June 3, 1948, by appellee or any member of his family or by Spencer Campbell or any other person from the said funeral home and it was necessary to omit the usual services had in connection with receiving such a body at the depot and escorting it to the funeral home. On the contrary, as a result of the failure of appellant's agent to deliver the said message, appellee and his family were attending a funeral at Post, Texas, some fifty miles from Spur when the body arrived; Doyle Hinson, a son of appellee and a brother of the deceased was riding a horse in a rodeo parade on the streets of Spur, Texas, at the time the body arrived and the director and his employees of the said funeral home were busy with their usual activities at the time the body arrived. Soon after the arrival of the body the depot agent at Spur gave notice to Spencer Campbell who took the body immediately to the funeral home and who, together with other friends and acquaintances, notified appellee and the immediate members of his family about the arrival of the body.

In his petition for damages appellee alleged the foregoing statements as facts and further alleged that because of the lack of advance notice of the arrival of his son's body, he was so disturbed and confused that he was wholly unable to collect his thoughts sufficiently enough to make the desired arrangements and preparations for the funeral service and was particularly deprived of the privilege of having some of his son's "war buddies" present for the funeral services as a result of which he was likewise deprived of having the proper honor paid his son that circumstances warranted. For all of which reasons he alleged that appellant was negligent which negligence caused him to suffer great mental anguish to his damages in the sum of $2,500.

The case was tried to a jury which found that appellant's failure to deliver the said message was negligence, which negligence was the proximate cause of appellee's suffering mental anguish for which he should be awarded damages in the sum of $2,500. The trial court rendered judgment accordingly from which an appeal has been perfected to this court.

Appellant pleaded as a defense that the failure of appellee to delay the funeral constituted contributory negligence which was the proximate cause of the injury about which he complains. In its first point of error appellant complains that the trial court erred because of its refusal to submit to the jury appellant's special requested issues inquiring if appellee's failure to delay the funeral was not such negligence as proximately caused the injuries about which appellee complained or a contributing proximate cause of such injuries. It appears that the essential elements of appellee's alleged cause of action were: (1) that a contract was made with appellant, for the benefit of appellee, to transmit and deliver the message in question; (2) that appellant was negligent in its failure to deliver the message at any time; (3) that such negligence of appellant was the proximate cause of appellee's mental anguish that resulted in his injuries; (4) that by reason of such injuries appellant was entitled to damages. By stipulation appellant, in effect, confesses its negligence, but it seeks to escape liability and to excuse its negligence by charging that appellee was guilty of contributory negligence in his failure to delay the funeral after he received notice of the arrival of his son's body. But appellee contends that a part of his material damages began to accrue before he had notice of the arrival of the body and before he knew the message had been given to appellant but not delivered and he did not have an opportunity to avoid the injury by the exercise of ordinary care. He further contends that the breach of contract by appellant that resulted in the sudden announcement of the arrival of the body of his deceased son disturbed and confused him to such an extent that he was unable to collect his thoughts so as to make proper arrangements for the funeral in accordance with the plans he had formerly made as a result of the notice he had previously received from the War Department advising him that he would be notified at least three or four days in advance when to expect the body. The message itself directed the Campbell Funeral Chapel to notify the "next of kin" immediately. The record reveals that appellee had contracted with the operator of the funeral chapel to receive and relay the notice to him when the body would arrive and to furnish for appellee all of its usual services in connection with the receiving of such a body under such circumstances. The funeral director testified, in effect, that such usual services consisted of notification in advance of the local American Legion and Veterans of Foreign Wars organizations, which furnished an honor guard at the station on arrival of the body and also furnished an escort and pall bearers, all of whom marched ahead of the coach that carries the remains from the railroad station to the funeral chapel at a time when the business houses of the town are closed out of respect for the honored deceased soldier. But, on the contrary, because of appellant's breach of the contract in its failure to deliver the message in question the business houses were not notified in this instance and were not closed when the body arrived, a rodeo parade was in progress within one block of the depot, no member of the family of the deceased was present and no funeral director with honor guard, escort and pall bearers met the train at the station to accompany the body to the funeral chapel.

Appellee had previously arranged with two of his deceased son's "war buddies" who lived in separate sections some sixty or seventy miles away, to attend the funeral. But, because of his confused and disturbed condition of mind as a result of receiving the body without any advanced notice, he forgot to notify the said "war buddies" about the funeral or to have them notified of such. The said "war buddies" were Leslie (Hoyt) Hill of near Post, Texas, and Coyt W. Hudson of Lubbock, Texas, both of whom testified at the trial that they would have attended the funeral if they had known about it. They had both enlisted in the Service with deceased early in 1941 and had been closely associated with him until he was killed. Hudson was with deceased after he was wounded and before he died and he had ministered as best he could to the needs and comforts of the deceased before his death.

The record reveals that appellee was sixty-two years of age and that because of his confused mental condition his son, Doyle Hinson, and his daughter, Mrs. Lassie Dean, made the funeral arrangements for the afternoon of the next day following the arrival of the body. They notified appellee's other children, all of whom attended the funeral as did some of the members of the American Legion and Veterans of Foreign Wars. Mrs. Dean endeavored to notify Leslie (Hoyt) Hill but her message did not reach him and she did not know how to reach Coyt W. Hudson. The record further reveals that appellee's first wife, the mother of the deceased and all of appellee's other adult children, had previously died on January 21, 1923, and that appellee had subsequently married again.

Usually contributory negligence is addressed to the issue of liability and is usually applicable only to the acts which produce the injury. Such may be applicable in a proper case for the purpose of mitigating damages if properly pleaded, proved and submitted for such a purpose. The burden is upon him who seeks such an advantage to so plead and prove such for the purpose stated and then to ask for its submission for such purpose. In spite of his confused mental condition, by the use of ordinary care appellee in this case may have delayed the funeral long enough to have notified the two said "war buddies" of his deceased son and have them attend and participate in such but it appears from the record that he was deprived of having the body of his son received on its arrival in the usual and customary manner and with the usual services rendered because of appellant's negligence. It is reasonable to assume under the facts and circumstances that the sudden notice of the arrival of the body produced mental confusion on the part of appellee and disturbed him to such an extent that he suffered mental anguish. The jury found such to be true and further found that the negligence of appellant was the proximate cause of mental anguish that resulted in the injuries. The most that could be said of appellant's plea of contributory negligence is that such may have been considered in mitigation of the damages if such had been so pleaded and so tendered for such a purpose. In the absence of such a plea for such a purpose and a request for the submission of it for such a purpose it is our opinion that the trial court properly refused to submit to the jury the special requested issues about which appellant here complains and its point to the contrary is overruled. The trial court is required to submit to a jury only the controlling issues made by the pleadings and the evidence. Rule 279, Texas Rules Civil Procedure.

Appellant attacks the trial court's judgment in its second point of error because it refused to submit to the jury the issue of unavoidable accident. The rule has been well established that such an issue exists only when there is evidence that something other than the negligence of one of the parties caused the injuries about which complaint is made. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407, 409; and Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. By stipulation appellant admits receipt of the message in question. The evidence shows conclusively that the same was never delivered and that the injuries, if any, resulted from appellant's failure to deliver the said message. We find no evidence in the record that has a tendency to show that the injuries about which appellee complains could have been caused by anything other than the negligence of appellant; and appellant fails to point out any evidence that would justify the submission of the requested issue. Its second point of error is therefore overruled.

Appellant complains in point three that the trial court erred in its refusal to include the element of "new and independent cause" in its definition of "proximate cause". According to the record before us appellant did not prepare in writing and submit to the trial court a substantially correct definition of proximate cause including the element of new and independent cause as is required by Rule 279 by a party complaining about

such a matter. In fact, appellant merely complained about the trial court's definition of "proximate cause" but failed to prepare and present to the trial court any kind of a definition or explanation in keeping with the objections made. For this reason alone appellant should not now be heard to complain. However, it is our opinion that the definition of "proximate cause" given by the trial court was a proper one under the pleadings and the evidence heard. The evidence did not raise the issue of new and independent cause or any element thereof. The controlling issues in this case must be determined wholly by the acts or omissions of the parties to this suit or their agents. There were no outside agencies operating to cause the injuries about which appellee complains. It has been held that the acts or omissions of either party to an injury suit such as this cannot raise the issue of a new and independent cause. Such can be raised and attributed only to some outside agency operating to cause such injury. Texas Cities Gas Co. v. Dickens, Tex.Civ. App., 156 S.W.2d 1010, affirmed 140 Tex. 433, 168 S.W.2d 208, and other authorities there cited. For all of which reasons given appellant's complaint raised in its third point of error is overruled.

■ Appellant's fourth, fifth and sixth points are grouped together for presentation, although they present separate and distinct matters that are not related to each other in such a way as to justify presenting and briefing them together. The fourth point charges that the trial court erred in overruling one of appellant's exceptions complaining because appellee nowhere alleged that the damages sought "were in the contemplation of" appellant and the sender of the message in question at the time such was accepted for delivery. The fifth point charges that error was committed by the trial court in its refusal to instruct a verdict for appellant for five different and distinctive separate reasons hereinafter set out, none of which are related to the complaint made in the fourth point. The sixth point complains because of the admission of certain evidence by the trial court over appellant's objections,

which is a separate and distinct matter from those about which appellant complains in points four and five. It has been held that separate and distinct matters that are not related to each other must not be grouped for presentation on appeal. Federal Underwriters Exchange v. Bickham, Tex.Civ.App., 136 S.W.2d 880, affirmed 138 Tex. 128, 157 S.W.2d 356; Traders & General Ins. Co. v. Scogin, Tex.Civ.App., 146 S.W.2d 1014; Darling v. Panhandle & Santa Fe Ry. Co., Tex.Civ.App., 209 S.W.2d 660. However, because of our liberal policy to consider such points so grouped and presented so long as we can determine with some degree of certainty what a party is complaining about, all of the said points will have our consideration.

■ It is our opinion that appellant's complaint made in point four to the effect that the trial court erred in overruling one of its special exceptions is not well taken. Appellee pleaded the contents of the message sent, which has been heretofore set out in full. He further pleaded, in effect, that the wording of the said message was plain and unambiguous and constituted notice to all parties of its importance and that the peril could be reasonably foreseen if the message should not be delivered to the addressee. The telegram in the case at bar was couched in such language as to put appellant on notice and its agents could not fail to realize and know the consequences of the failure to deliver the same to the addressee. It has been held that when a telegraphic communication such as this has been accepted for delivery, there accompanies it a common sense suggestion that it is important and that the persons connected with the same had a serious interest in the subject matter. Western Union Telegraph Co. v. Shaw, 142 Tex. 243, 177 S.W.2d 52, 55. The same case holds that a telegraph company is charged with notice of the existing relationship and with notice of such purpose as may be reasonably inferred from the language used in connection with the subject matter of the communication and that such a company "shall be answerable for all the injurious consequences of its tortious acts, which, according to the usual

course of events and general experience, were likely to ensue * * *." The judgment was reversed for other reasons, however, in that case.

■ Appellant's point five complains that the trial court erred in refusing to sustain its motion for an instructed verdict for five different and distinct separate reasons. Appellee charges that this point is multifarious, and it is, because it attempts to attack several distinct alleged errors and different rulings of the trial court in one point. Darling v. Panhandle & Santa Fe Railway Co., supra. However, for the reasons heretofore stated this point will be considered along with the others. Appellant contends that its motion for an instructed verdict should have been sustained (1) because the evidence fails to show that the "war buddies" of the deceased son of appellee would have attended the funeral or how their presence would have been any consolation to appellee. The two "war buddies" referred to testified that they would have attended the funeral if they had received notice of such. The record reveals that they both enlisted with deceased and that they were all from the same area in West Texas. They were all closely associated together for more than two years, a large part of which time they were in foreign service in Africa. There was evidence of the existence of strong ties of friendship between them, that probably equaled or exceeded the usual ties of blood relationship. These two young men gave an account of these friendship ties to appellee and told him about the death of his son, both by mail before they returned home and in person after they returned. For these reasons it is reasonable to presume that their presence at the funeral would have given some comfort and consolation to appellee.

■ Appellant further contends that its motion for an instructed verdict should have been sustained (2) because the body of the deceased was accompanied by a military escort and appellee could not therefore have any remorse as a result of his failure to meet the body on arrival because of lack of notice it was coming; (3) because appellant, when it accepted the message for delivery, could not contemplate that appellee would not make proper funeral arrangements when the body arrived; (4) because appellee had been advised five years previously of the death of his son and no additional suffering could have occurred because of returning the body to the United States; (5) because appellant could not contemplate at the time it received the message for delivery the failure of appellee to delay the funeral of his deceased son. It is our opinion that none of the alleged reasons constitute any legal reason for sustaining appellant's motion for an instructed verdict. On page 10 of its brief appellant concedes that "It is at once apparent that reasonable minds could differ as to whether plaintiff was damaged at all by not having advance notice of arrival of his son." It is our opinion that appellant has there correctly stated the very rule by which the merits of its motion for an instructed verdict should be determined. Since appellant makes such an admission, it concedes, in effect, that its motion for an instructed verdict was properly overruled by the trial court. After carefully examining the record it is our opinion that the said motion was properly overruled.

In its sixth point appellant charges that the trial court erred because it admitted, over appellant's objections, certain testimony of the witness, Spencer Campbell, to the effect that he would have had representatives of the American Legion and Veterans of Foreign Wars present to meet the train on which the body arrived if he had received the message in question; it further charges in the said point that it was error for the trial court to admit, over appellant's objections, the testimony of the witness Campbell given, in effect, as to the usual and customary procedure of the members of the said organizations when a body of a deceased soldier arrived as this one did and what their procedure would have been on this occasion; it further charges in the said point that the trial court erred in permitting appellee to testify, in effect, over appellant's objections, about his desire to have his son's two "war buddies"

present for the funeral and that they were prevented from attending because of the failure of appellant to deliver the message in question. Obviously this point is multifarious for the reasons heretofore stated but it will be considered by us for the reasons previously stated.

Most of the testimony about which appellant complains was subsequently repeated without objections from appellant. The rule is well established that an objection to the admissibility of testimony is waived and the error, if any, becomes harmless where the same evidence in substance is later admitted without objection. Chesshir v. Nall, Tex.Civ.App., 218 S.W.2d 248, and other recent authorities there cited. The witness Campbell testified that having representatives of the American Legion and Veterans of Foreign Wars present to meet the remains and to form an honor guard when the body of a deceased soldier arrived was a part of his usual and customary services rendered and that such would have been done on this occasion if the message in question had been received. The matters about which appellant here complains were pleaded by appellee as evidentiary matters in support of his claim for damages and it is our opinion that the evidence about which appellant here complains was properly admitted by the trial court. For the reasons given appellant's fourth, fifth and sixth points of error are all overruled.

In the alternative appellant contends in its seventh point of error that the damages awarded by the trial court and the jury are excessive and it has asked for a remittitur. After a careful examination of the record it is our opinion that there is some merit in appellant's seventh point. It is our opinion further that the authorities cited by both parties support the conclusion that we have reached in this matter. The amount of the award for damages in a case such as this rests primarily with the jury. The amount of the award is not, however, free from control or revision by either the trial court or this court. Kimbriel Produce Co. v. Webster, Tex.Civ.App., 185 S.W.2d 198;

40 Tex.Jur. 682-683, paragraph 172. The objective in assessing the damages to be awarded in a case such as this is to award reasonable compensation for the injuries suffered in the light of the facts and circumstances and not for the purpose of inflicting punishment upon appellant in order to impress it with the importance of using diligence. 40 Tex.Jur. 685, paragraph 173, and other authorities there cited. The same text further states that there are no fixed rules for measuring damages in a mental anguish case and that such damages may exceed $1,000 but rarely ever exceed $2,000, even in aggravated cases. In 1941 this court held that $1,250 was not an excessive amount of damages awarded for mental anguish in the case of Western Union Tel. Co. v. Lane, Tex.Civ.App., 152 S.W.2d 780. This court is aware of the rule cited by appellee to the effect that appellate courts may take judicial cognizance of the high costs of living and the low purchasing power of the dollar. We observed such a rule in the case of Dallas Railway & Terminal Co. v. Bishop, Tex.Civ.App., 203 S.W.2d 651.

It is our opinion, however, under all of the facts and circumstances that the judgment of the trial court is excessive and that in order to obtain an affirmance the sum of $1,000 must be remitted within ten days; otherwise the judgment of the trial court will be reversed and the cause remanded. Therefore, under the provisions of Rule 440 we accordingly suggest that appellee file a remittitur of $1,000 in this court within ten days from the date this opinion bears, in which event the trial court's judgment will be reformed accordingly and affirmed with judgment entered for appellee for the sum of $1,500; otherwise the judgment will be reversed and the cause remanded.

### Supplemental Opinion

On June 20, 1949, it was ordered that the judgment of the trial court in the foregoing cause be affirmed provided a remittitur of $1,000 was made to this court by appellee within ten days; otherwise the said judgment would be reversed because it awarded excessive damages. It appears

that such remittitur was made by appellee on the 27th day of June, 1949. Therefore, the judgment of the trial court is accordingly reformed awarding appellee the sum of $1,500 and as reformed the same is affirmed with all costs adjudged against appellant. Any motion for rehearing may be filed within fifteen days from this the 27th day of June, 1949.