**WESTERN UNION TEL. CO. v.
ESTRADA et al.**

**No. 12203.**

Court of Civil Appeals of Texas.
San Antonio.

Jan. 24, 1951.

Rehearing Denied Feb. 28, 1951.

Truehart, McMillan & Russell, and Goeth, Webb & Goeth, San Antonio, John H. Waters, New York City, for appellant.

Jackson & Jackson, and H. S. Groesbeck, Crystal City, for appellees.

NORVELL, Justice.

This is an appeal from a judgment rendered in favor of Linde Estrada and her husband, Paul Estrada, and against the Western Union Telegraph Company.

On September 12, 1949, Paul Estrada delivered the sum of $10, plus toll charges, to the Western Union office at Greenville, Texas, for the purpose of having the $10 transmitted to his wife, Linde Estrada, at La Pryor, Texas. Through an inadvertence in the Greenville office, the order of transmittal was placed in an improper file and never sent to La Pryor. Paul Estrada was a migratory farm laborer and during the month of September, 1949, he was picking cotton in the vicinity of Greenville, Texas. His wife, Linde Estrada, was about twenty years of age and the mother of three small children.

Upon three occasions, that is, on the 9th, 12th and 23rd days of September, 1949, Paul Estrada deposited $10 with the Greenville office of the Western Union for transmission to his wife in La Pryor. The Western Union had no regular office at La Pryor and in transmitting money to any one living in said town, the practice was to send the same to a San Antonio bank, which would in turn remit to the La Pryor bank. The La Pryor bank would then notify the person entitled to receive the money to call at the bank for the same. This notification was generally made by postal card. Under the terms of the contract printed upon the application for the transmittal of money it was specified that all money sent to towns where no regular office was maintained would be sent to some bank as the agent of the one receiving the money and not the agent of the telegraph company.

It appears that on September 15th Linde Estrada received the money sent by her husband on the 9th, and that on the 30th she received the money delivered by her husband to the Greenville telegraph office on the 23rd. As above stated, the money delivered to the Greenville office on the 12th was never transmitted to La Pryor.

Linde Estrada was enceinte at the time the sums of money were delivered to the telegraph company by her husband for transmission to her and she suffered a miscarriage on October 25, 1949. It was appellees' theory that this miscarriage and consequent illness and disability was caused by the failure of the telegraph company to transmit the $10 given to it for that purpose by Paul Estrada on September 12, 1949.

The case was submitted to a jury upon special issues. Upon the question of notice, the jury resolved a sharp conflict in the testimony in favor of appellees by finding that the agent of the telegraph company in Greenville was notified by Paul Estrada on September 12th, that his wife, Linde Estrada was sick and in need of money and medical attention. The trial court restricted the elements of damages to (a) physical pain and suffering of Linde Estrada from September 12, 1949, to date of trial, (b) the reasonable value of Linde Estrada's lost or diminished capacity to perform her duties as a mother and wife from September 12, 1949, to date of trial, and (c) the reasonable value of necessary doctor and medical bills incurred from September 12, 1949, to date of trial. The members of the jury were instructed that they should "not consider, nor allow, any amount for Linde Estrada's physical and mental pain and suffering, nor for her diminished capacity to perform her household duties, nor for doctor's, hospital and medicine bills because of Linde Estrada's miscarriage and ensuing illness to the extent that the same were not aggravated or prolonged by the telegraph company's failure to transmit the ten dollars deposited with it on September 12, 1949." The jury found damages in the sum of $1,040.60 had proximately resulted from appellant's negligence in failing to transmit the money delivered to it on September 12, 1949. It is a reasonable inference that $40.60 of this amount represented doctor and medical bills and that $1,000 was allowed for pain and suffering and diminished capacity.

At the request of appellant, the court submitted a number of defensive issues, all of which were answered unfavorably to appellant. The jury refused to find that Linde Estrada was negligent in failing to go or send to the La Pryor bank for the money sent to her (by her husband at Greenville on September 9th) until September 15, 1949.

The jury also refused to find that Linde Estrada was negligent in failing to secure the remittance of September 23rd until September 30, 1949. The jury likewise refused to find that the La Pryor bank (as agent of appellees) failed to promptly notify Linde Estrada of the receipt of the $10 sums sent to it as a result of Paul Estrada's deposits in Greenville on the 9th and 23rd days of September. The jury also refused to find that Linde Estrada could have by reasonable diligence procured medical attention before October 25, 1949.

By the first three of nine points, appellant contends that a peremptory instruction to find for the appellant should have been given to the jury for the reasons that, (a) the notice of special damages was insufficient (the $10 and toll charges paid were tendered into court); (b) the special damages allowed by the jury were too remote as a matter of law, and (c) there was no causal connection shown between the failure by the appellant to transmit the money and the injuries suffered by appellee Linde Estrada.

The fourth point asserts that the jury's finding on the question of causation was against the overwhelming preponderance of the evidence.

By its fifth, sixth, seventh and eighth points, it is asserted that appellees are precluded from recovering because of their own contributory negligence.

By its ninth point appellant contends that the jury's award of damages was excessive.

Paul Estrada testified that on the 12th of September he went to the Western Union office at Greenville and told the company's agent that he had received a letter from his wife stating that she was sick and needed money to see a doctor. He said that he wanted to send his wife $10 and delivered that sum, plus eighty-three cents for toll charges, to the company's agent for the purpose of having the money sent to his wife. Estrada also testified that the company's agent told him that the money would be sent to La Pryor as quickly as possible. As above pointed out, the jury found in accordance with Estrada's testimony, al-though it was contradicted by appellant's agent.

Insofar as notice is concerned, the point of appellant's objection seems to be that as Estrada did not tell the agent that his wife was enceinte, special damages because of her pain and suffering, diminished capacity, etc., attributable to the wife's condition can not be recovered.

It appears, however, that the telegraph company had notice that the wife of the person depositing the money for transmittal was ill and needed a doctor. The fastest practicable means of getting the money to the sick wife was employed. In accordance with an abundance of authority in Texas, it must be held that such notice was sufficient to charge the telegraph company with notice of special damages. In the comparatively recent case of Western Union Telegraph Co. v. Shaw, 1944, 142 Tex. 243, 177 S.W.2d 52, 54, the Supreme Court said:

"It is the settled law of this State that when a telegraphic communication relates to sickness or death there accompanies it a common-sense suggestion that it is of importance, and that the person addressed has in it a serious interest. Western Union Tel. Co. v. Adams, 75 Tex. 531, 12 S.W. 857, 859, 6 L.R.A. 844, 16 Am.St.Rep. 920.

"There is also a recognized principle of law in this State that where the language of the telegraphic message is sufficient in itself to disclose the general nature of the communication, it devolves upon the agent receiving the message to make a reasonable inquiry of the sender as to the nature of the message, and by this means to gain fuller information as to the transaction or matter about which the message relates, and upon a failure to make such inquiry his principal will be charged with the information that such inquiry would have revealed. Western Union Tel. Co. v. True, 105 Tex. 344, 148 S.W. 561, 562, 41 L.R.A.,N.S., 1188, and authorities cited."

In our opinion the rule above stated is applicable here. In this case, because of the urgency of the situation, a rapid method of forwarding money was desired. The

agent was notified of the illness of the wife and of the fact that the money was needed to secure the services of a doctor. We hold that the notice of special damages was sufficient. Western Union Telegraph Co. v. Linn, 87 Tex. 7, 26 S.W. 490; Western Union Telegraph Co. v. Johnson, 111 Tex. 1, 226 S.W. 671; Western Union Telegraph Co. v. Gold, Tex.Civ.App., 235 S.W. 331.

■ We are also of the opinion that the evidence is sufficient to support the jury's finding that there was a causal connection between the injuries suffered by appellees and the failure of the appellant to transmit the money delivered to it on September 12th. The facts of this case, particularly the circumstances of the appellees and their children, were somewhat unusual. There is evidence in the record, consisting principally of the testimony of Linde Estrada, to the effect that she and her family were poor and uneducated people, entirely dependent upon the earnings of Paul Estrada for their support, and that she did not know of a charitable agency in Zavala County which would assist her, although it was shown that the Red Cross maintained an agency in the county, from which medical assistance could be obtained, and there was a hospital in Crystal City, the county seat, which took charity patients. Ultimately, on October 25, 1949, Linde Estrada was sent to this hospital by a Dr. King, who was a physician at La Pryor. Linde Estrada testified that it was necessary to spend the money she received on the 15th (sent on the 9th) and on the 30th (sent on the 23rd) of September, for food for her children and herself. Shortly before the 12th of September, she wrote her husband that she was sick and needed a doctor. She testified she went to see Dr. King about this time, when both she and one of her babies were sick. The doctor gave her some medicine for the baby, but she got the impression that the doctor would not treat her because she had no money. Linde Estrada testified through an interpreter and part of her testimony is rather confused. From it, however, the jury could reasonably draw the conclusion that Linde Estrada was an ignorant and inexperienced person who used what money she received from her husband for food

and necessaries for her children and did not secure the medical treatment which she needed because she had no money (above that required for food) to pay for the same and knew of no other way to obtain it.

Dr. Esther McGinness of the Crystal City Hospital and Clinic testified that she saw Linde Estrada in a professional capacity on the 25th day of October. At that time Linde Estrada appeared to be about three months pregnant and was having pains and symptoms of miscarriage and had been bleeding for a period of four or five days. An attempt was made to save the fetus but this proved to be impossible. Dr. McGinness stated her opinion in answer to the questioning as follows:

"Q. From what you saw and what you observed of this particular patient, and from the history you obtained from her, had she had medical care and attention a month or six weeks prior to her entry into the hospital, in your opinion could the miscarriage, or would the miscarriage, have been avoided? A. Well, considering the fact that she had had three previous pregnancies with full term delivery, it would. You can't say definitely, but the circumstances would have been in favor of her probably being able to carry pregnancy through this time if she had received attention earlier.

"Q. Now, in order to make—have a positive statement—I want to put the question to you again: That in your opinion had she had medical care and attention, could, or would, the pregnancy have been avoided—as a matter of your opinion? A. You mean 'the miscarriage,' don't you?

"Q. Yes. A. I can't say definitely 'yes.' But I can say in all probability, in the majority of the cases such as hers, it could have been saved.

"Q. Have you any opinion what could and would have happened had she had medical care? A. My opinion would be she would not have had a miscarriage."

We are of the opinion that under the applicable authorities the evidence was sufficient to take the case to the jury upon the question of the causal relationship between Linde Estrada's injuries and the negligent failure of the appellant company.

The case of Western Union Telegraph Co. v. Cooper, 71 Tex. 507, 9 S.W. 598, 600, 1 L.R.A. 728, supports the efficacy of Dr. McGinness' testimony in this case. In the Cooper case the Supreme Court held that, "Dr. Cooper, having shown himself competent to testify as an expert, could give his opinion as to whether the child would have been born alive if he had received medical assistance in time. The death of the child was a proper inquiry, if it tended to prolong labor, as above explained, notwithstanding there could be no damages for its death, and consequent loss of services, in this action."

In Western Union Telegraph Co. v. Burris, Tex.Civ.App., 147 S.W. 1173, this Court upheld an award of damages for a nervous breakdown of a wife because of the telegraph company's failure to promptly deliver a telegram to the husband requesting that money be immediately forwarded because of the illness of a daughter.

In Goodwin v. Western Union Telegraph Company, Tex.Civ.App., 160 S.W. 107, the Fort Worth Court held that the case was for the jury where it was shown that the telegraph company negligently failed to promptly transmit money to a sick wife who was out of the state and had wired her husband for money. Upon a second appeal of this case, Western Union Telegraph Co. v. Goodwin, Tex.Civ.App., 173 S.W. 1164, 1165, the Court said: "In view of the information given to defendant's agent at Abilene by the plaintiff at the time the message was deposited in that office for transmission relative to the condition of his wife's health and her necessities, we are of the opinion that the physical and mental suffering indicated by the testimony noted above were reasonably within the contemplation of the defendant as a result of a negligent failure on its part to transmit the message with reasonable dispatch, and that the trial court did not err in overruling defendant's general demurrer and special exception. We so ruled on the former appeal, and are convinced that there was no error in that ruling. W[estern] U[nion] Telegraph Co. v. Simpson, 73 Tex. [422] 426, 11 S.W. 385; W[estern] U[nion] Telegraph

Co. v. Cooper, 71 Tex. 507, 9 S.W. 598, 1 L.R.A. 728, 10 Am.St.Rep. 772; Womack v. W[estern] U[nion] Telegraph Co. [Tex. Civ.App.], 22 S.W. 417; W[estern] U[nion] Telegraph Co. v. Odom, 21 Tex.Civ. App. 537, 52 S.W. 632; W[estern] U[nion] Telegraph Co. v. Burgess [Tex.Civ.App.], 56 S.W. 237; W[estern] U[nion] Telegraph Co. v. Richards [Tex.Civ.App.], 158 S.W. 1187; W[estern] U[nion] Telegraph Co. v. Mooney [Tex.Civ.App.], 160 S.W. 318; W[estern] U[nion] Telegraph Co. v. Chilson [Tex.Civ.App.], 168 S.W. 878."

We overrule appellant's first, second and third points of error, as well as the fourth point relating to the fact issue of the preponderance of the evidence.

We are further of the opinion that under the evidence appellant's affirmative defenses were for the jury. Much of what has heretofore been said has application here. Under the facts of this case, we cannot say, as a matter of law, that appellees were guilty of negligence which contributed to the injuries and damages sustained by them.

Appellant's fifth, sixth, seventh and eighth points are overruled.

The jury's award of damages is not so excessive as to justify our interference therewith. The facts of Western Union Telegraph Co. v. Cooper, Tex.Sup., 20 S. W. 47, are in many respects similar to those of the case now before us. The decision was made in 1892, when the dollar possessed more relative value than it does at the present time. The Supreme Court, in the course of its opinion said: "It is finally insisted that the verdict is excessive. The damages awarded were $600. The amount of the damages was peculiarly within the province of the jury, and it is clearly not so excessive as to indicate that it was the result of passion and prejudice. Under the rule established in this court, it is not sufficient to warrant a reversal of the judgment."

Appellant's ninth point is overruled. Western Union Telegraph Co. v. Hicks, Tex.Civ.App., 47 S.W.2d 466, wr. ref.

The judgment is affirmed.