**John H. WIIK, Appellant,**

**v.**

**RIGGERS & CONSTRUCTORS, INC., Appellee.**

**No. 8281.**

Court of Civil Appeals of Texas, Beaumont.

Nov. 1, 1979.

Rehearing Denied Nov. 29, 1979.

Gordon E. Davenport, Jr., Gene S. Hagood, Alvin, for appellant.

Ervin A. Apffel, Jr., Paul W. Tipton, Galveston, for appellee.

DIES, Chief Justice.

This is a third-party personal injury liability case. John H. Wiik, plaintiff below, sued Riggers & Constructors, Inc., defendant below, to recover damages for personal injuries sustained when he fell to the ground while running away from a fire caused by a boom which fell from a crane. The crane was being operated by defendant.

Trial was to a jury which failed to find that defendant overloaded the crane "in the manner in which the vessel was lifted" (S.I. No. 1); failed to find that defendant overloaded the crane "in the manner in which the vessel was moved" (S.I. No. 4); failed to find defendant laid the mats negligently (S.I. No. 7); and answered "none" to the damage issue as well as medical expense, past and future. A take-nothing judgment followed, from which plaintiff brings this appeal.

Plaintiff's first eleven points of error all contend that the answers to the issues were so against the great weight and preponderance of the evidence as to be manifestly unjust and that negligence and proximate cause as to each issue was established as a matter of law. This requires that we examine all the evidence and reverse and remand for a new trial if we conclude the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The plaintiff, John Hilmar Wiik, a resident of Gilchrist, Texas, was an iron worker for Southern Industrial Pipe, Inc., on August 9, 1973, when defendant by crane lifted a 70-foot long vessel. The crane, a 3,900 Manitowac, was on hardwood "mats" to give it better support on the road surface. The road was blacktop, a little higher in the middle part, and the mats were laid the same way the road runs. The vessel was lifted by the crane; it swayed back and forth some; then, the vessel fell. Plaintiff knew it was going to fall and started running away from it, fell down and was hurt. Plaintiff thinks the mats should have been laid sideways, across the road, for better distribution of the weight and better stability of the crane.

Floyd Marvin Baker was the crane operator when the vessel fell. The vessel weighed 90,000 pounds, 45 tons. It was his intention to pick up the vessel over a pipe rack, walk it back, and set it on the foundation. The crane was on mats to give it more stability. After he got the vessel up clear of the pipe rack, he moved the crane five or six feet. Then the crane "came up in the back and just settled back down and then turned over." It was then the vessel fell. The lifting capacity of this crane was 135 or 140 tons. He has no idea what caused the accident. After the accident, "Mr. Borden" expressed the opinion that the ground had given way under the mat.

Frank Murphee testified he was working for defendant on the day of the accident as job superintendent. The mats they laid "were eight foot by sixteen foot, laminated mats, approximately six to eight inches thick." They were made of hardwood lum-

ber. What happened was the whole mat went down, "[p]robably six inches" because "[t]he ground gave away under it." There was nothing wrong with the mats.

Jeffrey Oliver Beauchamp, a mechanical engineer from Houston, Texas, went to the plant site in March 1976. Before the visit he reviewed some photographs. He concluded the maximum load capacity for this crane under the circumstances then existing was 49,000 pounds. It was his opinion the crane was overloaded.

John Clark, an iron worker for Southern Industrial Pipe, Inc., would also have laid the mats differently. After the rig was removed, he saw a big hole in the road at the back of the track on the right hand side.

Henry Zane Yarbrough, a heavy equipment operator, testified the road on which the crane fell was "fairly new" and of asphalt surface and that it was in good condition before the accident. He was also somewhat critical of the way the mats were laid, and he thought the crane was overloaded. He saw nothing to indicate a cave in.

Walter J. Smith also felt it was wrong to lay the mats lengthwise with the track; he looked at the road surface after the mats were removed. There was nothing wrong with it.

James Edward Hulse, vice president and chief engineer of defendant with experience with the operation of heavy equipment since 1952, formulated the plan for erecting the vessel. The crane involved, he testified, was rated at 135 tons. He disputed much of plaintiff's testimony, and concluded that the accident was caused by a "depression" in the ground, saying ". . . the entire area to the rear of the crane was slightly depressed." This caused a "rocking" of the vessel, followed by the fall. He testified the mats were laid lengthwise because "in walking a crane, the mats are stronger in that direction" and that they would lay flat on the road surface in that direction. The crane operator was "none better."

■ So, from the above summarized evidence, we see that, while plaintiff produced evidence to support his contentions, the jury had probative evidence to support its findings, and it is not for this court to substitute our judgment for the jury merely because we might have reached different conclusions from the evidence. *Bardwell v. Anderson*, 325 S.W.2d 929, 935–936 (Tex. Civ.App.—Houston 1959, writ ref'd n.r.e.). These points are overruled.

Plaintiff has points complaining that the trial court defined "new and independent cause" when it was not raised by the evidence or plead by the defendant.

■ Acts or omissions of either party to an injury suit cannot raise the issue of new and independent cause; the issue can be raised and attributed only to some outside agency operating to cause such injury. *Western Union Telegraph Co. v. Hinson*, 222 S.W.2d 636, 641 (Tex.Civ.App.—Amarillo 1949, writ ref'd n.r.e.).

■ The testimony of Hulse that the accident was caused by a depression occurring in the ground under the crane would seem to us to raise the issue. At any rate, we do not find it harmful error. Tex.R.Civ.P. 434.

■ The theory of new and independent cause is not an affirmative defense. It is only an element to be considered by the jury in determining the existence or non-existence of proximate cause. *Dallas Railway & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379, 383 (1952). See also *Phoenix Refining Co. v. Tips*, 125 Tex. 69, 81 S.W.2d 60 (1935); *Young v. Massey*, 128 Tex. 638, 101 S.W.2d 809 (1937). See also, *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 634 (Tex.1976). "We have already held that instruction to the jury should be substituted for the submission of: . . . new and independent cause." These points are overruled.

Plaintiff has points complaining of the trial court's refusal to submit certain proffered special issues, which we find without merit, and they are overruled.

The judgment of the trial court is affirmed.

AFFIRMED.